# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT
### 10-693 c/w 10-694

**STATE OF LOUISIANA**

**VERSUS**

**JONATHAN EDWARD BOYER**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 14005-02
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**J. DAVID PAINTER**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Marc T. Amy, and J. David Painter, Judges.

**AFFIRMED.**

**John F. Derosier**
**District Attorney**
**Cynthia S. Killingsworth**
**First Assistant District Attorney**
**Carla S. Sigler**
**Assistant District Attorney**
**1020  Ryan St.**
**Lake Charles,  La  70601**
**Counsel for Appellee:**
  **State of Louisiana**

**Richard Bourke**
**636 Baronne St.**
**New Orleans, LA 70113**
**Counsel for Defendant/Appellant:**
  **Jonathan Edward Boyer**

**PAINTER, Judge**.

In these consolidated cases, Defendant, Jonathan Edward Boyer, appeals his convictions of second degree murder and armed robbery with a firearm and the sentences imposed therewith. For the following reasons, we affirm the convictions and sentences.

## FACTS

Late in the evening of February 4, 2002, Defendant and his brother, Anthony Boyer, were walking along the roadway in Sulphur, Louisiana. They were given a ride by Bradlee Marsh in his truck. Defendant demanded money from Marsh. When Marsh did not comply, Defendant shot him three times in the head. Defendant then took Marsh's money and a silver chain. Marsh died as a result of the gunshot wounds. Defendant was apprehended in Jacksonville, Florida, on March 8, 2002.

## PROCEDURAL HISTORY

Defendant was indicted under lower court docket number 14005-02 on June 6, 2002, for first degree murder, a violation of La.R.S. 14:30. On May 21, 2007, the indictment was amended to reduce the charge to second degree murder, a violation of La.R.S. 14:30.1. On the same date, under lower court docket number 11337-07, Defendant was charged by a bill of information with armed robbery with a firearm, violations of La.R.S. 14:64 and 14:64.3. Both the amended indictment and the bill of information involved the same victim.

A jury trial began on September 22, 2009. On September 29, 2009, Defendant was found guilty on both counts. On October 14, 2009, Defendant filed a motion for new trial and a motion for arrest of judgment. Both motions were heard on October 14, 2009, and denied on the same date.

1

Following waiver of all delays, the trial court sentenced Defendant to life imprisonment without the possibility of parole on the conviction for second degree murder. The court also sentenced Defendant to ninety-nine years imprisonment without benefit of parole on the conviction of armed robbery and an additional five years for the use of a firearm to be served consecutively to the ninety-years for a total of one hundred and four years. The sentences for the armed robbery with a firearm were ordered to be served concurrently with the life sentence. Defendant did not file a motion to reconsider the sentences. However, he objected in open court based on the issues raised in his sentencing memorandum.

Defendant appealed both lower court docket numbers in a timely manner. The appeals were ordered to be consolidated in conformity with the trial court's order of consolidation.

**DISCUSSION**

Errors Patent

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record.

There is a potential error regarding proceedings that took place after Defendant's incapacity to proceed was raised, but before he was found by the court to have the mental capacity to proceed.

Louisiana Code of Criminal Procedure Article 642 states:

> The defendant's mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court. When the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed.

2

In the present case, several steps took place after the issue of mental capacity to proceed was raised but prior to the finding that Defendant had the mental capacity to proceed.

On July 18, 2008, Judge G. Michael Canaday appointed a sanity commission comprised of Drs. James Anderson and Garrett Ryder to examine the Defendant to determine whether he had the capacity to proceed. The court ordered all pending matters suspended until Defendant's competency was determined. On the same date, on behalf of Judge Canaday, Judge D. Kent Savoie appointed Dr. Charles Robertson to the sanity commission in place of Dr. Ryder.

Defense counsel asked to be present at the sanity commission evaluation, and the State objected. The parties submitted briefs on the issue outlining their positions, and on July 23, 2008, the court denied the defense's request.

On August 4, 2008, Judge Robert Wyatt, at the request of Judge Canaday, appointed Drs. Ryder and Robertson to the sanity commission and set the competency hearing for August 6, 2008.

On August 6, 2008, the court held a hearing and determined that Defendant lacked the mental capacity to proceed at that time. Due to an extensive waiting list at the Eastern Louisiana Mental Health System, Forensic Division, the court ordered that Defendant's name be placed on the list and that he be remanded to that facility. In the interim, the court ordered that Defendant be observed and treated and that a six-month status conference be scheduled as provided for in La.Code Crim.P. art. 648. The court explained that the State would have to set the date for the status hearing after consulting both the State's and the court's calendars. At the close of the August 6, 2008 hearing, the State filed a First Supplemental Response to Defendant's

3

Omnibus Motion for Discovery of Forensic and Scientific Evidence, stating that it had not yet received a report on a fingerprint analysis and DNA testing that it had requested from the Southwest Louisiana Criminalistics Laboratory but that it would supply the report upon receipt.

On September 8, 2008, the court issued a written Sanity Judgment, finding that Defendant lacked the mental capacity to proceed and ordering that Defendant be committed to remain in custody at Feliciana Forensic Facility until further order of the court.

On March 6, 2009, the State filed a Motion to Reappoint Sanity Commission, requesting re-examination of Defendant due to the expiration of the six-month period. The State requested the appointment of a sanity commission consisting of Drs. Robertson and Ryder to re-examine Defendant and to report to the court. An order re-appointing a sanity commission comprised of Drs. Robertson and Ryder was signed by the court on March 6, 2009.

On March 16, 2009, the defense filed a Motion for Status Hearing and to Vacate Re-Appointment of Sanity Commission contending that the procedure outlined in La.Code Crim.P. art. 648(A)(2)(b) was not adhered to when the State filed, and the court granted, the State's ex parte request. On April 9, 2009, the State responded to the defense's motion, asking that the court uphold the status conference order but deny the motion to vacate the re-appointment of a sanity commission

On April 15, 2009, the defense filed a motion for recusal of Judge Canaday, asking for his recusal from the trial due to his receipt of ex parte communications from the State and his acceptance of and granting of the ex parte motion filed by the State. The State filed an opposition to the recusal motion. On April 15, 2009, a

4

hearing was held, and the recusal motion was the first matter taken up. The recusal motion was summarily denied without referral for hearing by another division of the court. The defense indicated its intention to file a writ application, and its request for a stay of the proceedings was denied by the trial court. The issue of competency to proceed was then taken up by the court. The defense indicated that it was willing to proceed on the submission of the sanity reports and that it did not wish to cross-examine the physicians. The court subsequently found that Defendant was competent to proceed to trial.

Although a number of "steps" took place during the pendency of the competency issue, most concerned the procedures related to the capacity issue itself. One of the other "steps," the State's response to the discovery motion, has been found by the second circuit to not be prejudicial to a defendant. In *State v. Darnell*, 43,048, pp. 11-12 (La.App. 2 Cir. 8/13/08), 988 So.2d 870, 877, the second circuit stated:

> As for defendant's argument concerning the trial court's alleged failure to stay the proceedings, the only intervening actions taken by the state or the trial court prior to the trial court's capacity determination involved the filing of discovery responses by the state and some apparent scheduling conferences. The purpose of the stay of prosecution under Article 642 is to ensure that no action prejudicial to the defendant will be taken until the defendant's capacity to understand the nature of the proceedings and to assist in his defense has been established. *See,* La. C. Cr. P. art. 642, Official Revision Comment (b); *State v. Perkins*, 00-9 (La.App. 5th Cir.05/17/00), 759 So.2d 334, *writ denied*, 00-1826 (La.), 813 So.2d 1098. None of the actions taken could be deemed prejudicial to defendant in any manner.

We agree with this reasoning and find that this "step" was not prejudicial to Defendant.

As for the motion to recuse, we find that any error that occurred was harmless. In *State v. Karam*, 02-163 (La.App. 3 Cir. 7/31/02), 834 So.2d 1003, hearings on several motions were held in the interim between the appointment of a sanity

5

commission and the determination that the defendant was found competent to proceed to trial. In addressing the issue, this court stated:

> La.Code Crim.P. art. 642 provides, in part, that: "When the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed." Although the hearing was held in error in this case, we conclude that any error was harmless. *See State v. Young*, 576 So.2d 1048 (La.App. 1 Cir.), *writ denied*, 584 So.2d 679 (La.1991).
>
> In *State v. Calais*, 615 So.2d 4, 5 (La.App. 3 Cir.), *writ denied*, 617 So.2d 1180 (La.1993), a panel of this court explained that the stay of proceedings described in Article 642 ensures "that no action prejudicial to the defendant will be taken until the defendant's capacity to understand the nature of the proceedings and to assist in his defense has been established." In addition to the type of motions heard by the trial court prior to the opinion of the sanity commission, which were primarily those filed by the defendant's counsel and which were generally resolved in his favor, we point out that these hearings were pretrial in nature.

*Id.* at 1008. *See also*, *State v. Young*, 576 So.2d 1048 (La.App. 1 Cir.), *writ denied*, 584 So.2d 679 (La.1991); *State v. Francois*, 05-1385, pp. 2-3 (La.App. 3 Cir. 4/5/06), 926 So.2d 744, 747, *writ denied*, 06-1048 (La. 1/12/07), 948 So.2d 138.

The defense filed a recusal motion which was heard just prior to the court ruling that Defendant had the capacity to proceed to trial. Although the motion was not resolved in Defendant's favor, Defendant does not allege prejudice by the occurrence of this "step" prior to the determination that he had the capacity to proceed to trial. Additionally, the ruling on the recusal motion and the capacity to proceed were issued in the same hearing. Therefore, we find that any error in this regard was harmless.

Impeachment of Witness

Defendant argues that the trial court erred when it sustained the State's objection to his attempts to question a witness, Anthony Boyer, about a domestic

6

abuse allegation made by Anthony Boyer's wife a year prior to trial. Although the incident was reported to the police, Anthony Boyer was never charged.

At trial, defense counsel asked the witness about an incident involving his wife. The State objected, and the matter was discussed outside the purview of the jury. The State argued that the defense was not allowed to impeach the credibility of a witness with a non-conviction. Defendant argued that he was being denied his constitutional right to confront the witness and to present a defense.

In brief, Defendant argues that Anthony Boyer was the "primary alternative suspect in the killing of Bradlee Marsh." He argues that the State purposefully did not charge Anthony Boyer, a vicious drunk, who savagely assaulted his wife. He argues that the State chose not to pursue the incident so that their star witness could be presented "as a mild mannered ingénue placed in the difficult position of having to testify against his brother." At trial, the State conceded that if the charge was still pending, there might be an argument for allowing this line of questioning. Otherwise, the State argued Defendant was precluded from discussing an incident which did not result in a conviction as set forth in La.Code Evid. art. 609.1. Louisiana Code of Evidence Article 609.1, in pertinent part, provides:

> A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.

> B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.

Defendant, however, argued that "[s]o you can't get up and impeach a witness' general credibility on the basis of arrests; but where you can draw a link and create

an inference that the arrest or investigation or dismissal of a charge has an association with the testimony, then you are allowed to do it." Defendant was apparently referring to La.Code Evid. art. 607(D), which provides that a witness' credibility may be attacked with extrinsic evidence that shows "a witness' bias, interest, corruption, or defect of capacity."

The trial court cited *State v. Jefferson*, 04-1960 (La.App. 4 Cir. 12/21/05), 922 So.2d 577, *writ denied,* 06-940 (La. 10/27/06), 939 So.2d 1276, and agreed with the defense that an exception to La.Code Evid. art 609.1 was recognized to establish a witness' bias or interest that may arise from arrests, pending criminal charges, or the prospect of prosecution. The State denied even knowing about the arrest, stating that the domestic violence unit "rejected the charge. It's been closed I think since March. I looked at that file yesterday. I didn't even know about it. There were no offers, deals, anything made with the defendant [Anthony Boyer]." The trial court sustained the State's objection to the line of questioning for the reason that there was no pending charge as a result of the domestic abuse allegation.

In *Jefferson,* the issue was whether the defense could question a witness regarding a misdemeanor offense unrelated to the matter at trial. The fourth circuit stated:

> The admissibility of evidence under both La. C.E. art. 607(C) and (D) is subject to the balancing standard of La. C.E. art. 403, which states that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or waste of time. See 1988 Official Comments to La. C.E. art. 607. The jurisprudence has recognized that the rule espoused in *Vigee* is likewise subject to a balancing standard; "when 'prejudice to the prosecution is balanced against defendant's constitutional right to present relevant evidence in support of his defense, [the] balance should be weighed in favor of admissibility in those cases in which the prejudice is minimal.'" *State v. Mosby,* 595 So.2d 1135, 1138 n. 5 (La.1992)(quoting *State v.*

*Vaughn*, 431 So.2d 358, 370 (La.1982)). However, as the Supreme Court noted in *Mosby*, "[u]ltimately, questions of relevancy and admissibility are discretion calls for the trial judge ... [that] should not be overturned absent a clear abuse of discretion." *Mosby,* 595 So.2d at 1139.

. . . .

. . . [W]e find no error in the trial court's apparent conclusion that any possible relevance of the 2003 Jefferson Davis Parish misdemeanor charge is substantially outweighed by the potential prejudice, confusion of the issues, or misleading of the jury. We also find that reference to the misdemeanor charge is improper under La. C.E. art. 609.1, which states that generally only offenses for which the witness has been convicted are admissible in criminal cases and that no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal. Although a well-settled exception is recognized to establish a witness's bias or interest that may arise from arrests or pending criminal charges, or the prospect of prosecution, this exception is inapposite here. We thus find this assignment of error unpersuasive.

*Id.* at 594-96.

In brief, Defendant argues that the evidence of Anthony Boyer's violent tendencies was relevant evidence in that "when drinking, rendered it more probable that he was the person who shot Mr. Marsh." He points to La.Code Evid. art. 401, which defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Defendant correctly argues that "Louisiana Courts of Appeal have held that the restrictions of La.C.E. [art.]404(B) do not apply to relevant evidence of other criminal or wrongful acts committed by third persons." *See State v. Mims,* 97-1500 (La.App. 4 Cir. 6/21/00), 769 So.2d 44, *writs denied,* 00-2255 (La. 6/22/01), 794 So.2d 781 and 00-2270 (La. 6/22/01), 794 So.2d 782. Louisiana Code of Evidence Article 404(B) provides that evidence of crimes, wrongs, or acts may not be admitted to prove the

9

character of an accused in order to show that he acted in conformity with the alleged offense, unless the evidence was offered to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or accident, and the state provided sufficient notice of intent to use such evidence.

Defendant argues that the probative value of the evidence as opposed to its prejudicial value may be determined by the trial court, which the trial court declined to do in this case, instead denying Defendant his right to confront the witness because there was no pending charge at the time of trial.

The general rule of La.Code Evid. art. 609.1 may give way when the cross-examiner desires to show bias or influence on the testimony of the witness. In *State v. Vale and Neidhardt*, 93-895 (La.App. 5 Cir. 1/31/95), 650 So.2d 379, the fifth circuit affirmed Vale's conviction. The State dismissed the charges against one of the defendants based on his testimony as a witness against the other defendant. However, by the time of trial, a charge was pending against the witness in another division of the court. The trial court sustained the state's objection to the defense's questioning of the witness regarding the pending charges. However, in *State v. Vale*, 95-1230, p. 4 (La. 1/26/96), 666 So.2d 1070, 1072, the Supreme Court reversed the fifth circuit's affirmation of the trial court's ruling and remanded for a harmless error analysis, stating:

> This court granted certiorari because the trial court's ruling, affirmed by the court of appeal, conflicted with numerous decisions by this court that to the extent exposure of a witness's motivation is a proper and important function of the constitutionally protected right of cross-examination, a witness's "hope or knowledge that he will receive leniency from the state is highly relevant to establish his bias or interest." *State v. Brady*, 381 So.2d 819, 822 (La.1980) (collecting cases); *see also State v. Nash,* 475 So.2d 752, 755-56 (La.1985). A witness's bias or interest may arise from arrests or pending criminal

10

charges, or the prospect of prosecution, even when he has made no agreements with the state regarding his conduct. *Id*.

In the current case, while there had been an arrangement regarding his testimony for the State, the witness had already been convicted of an offense in connection with the killing of the victim. He testified at trial that he pled guilty to obstruction of justice and received a ten-year sentence, suspended, one year in the parish jail and five years probation. He was on probation at the time of trial. He stated that testifying truthfully at Defendant's trial was a part of the plea agreement. He acknowledged that he was aware that the District Attorney's Office had control over whether or not to revoke his probation. However, at the time of trial, there was no pending charge in connection with which the witness could bargain his testimony for leniency.

We conclude that the trial court did not abuse its discretion when it refused to allow Defendant to question the witness about an incident which did not result in a pending charge or conviction and where there was no prospect of prosecution. Louisiana Code of Evidence Article 608(B) provides that "[p]articular acts, vices or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness, other than conviction of crime as provided in Articles 609 and 609.1 or as constitutionally required." Further, any relevance of the domestic abuse complaint was substantially outweighed by the possibility of prejudice, confusion of the issue, or misleading of the jury.

Exclusion of Defendant's Expert

Defendant argues that this court erred when it reversed the trial court's pretrial ruling which permitted testimony from an expert on the psychology of confessions

11

and interrogations. However, the record before this court indicates that this court's ruling was made on the merits as presented and nothing has been currently argued that would indicate that the ruling was erroneous. The Louisiana Supreme Court in *State v. Humphrey*, 412 So.2d 507, 523, (La.1981), held:

> When this court considers questions of admissibility of evidence in advance of trial by granting a pretrial application for supervisory writs (rather than deferring judgment until an appeal in the event of conviction), the determination of admissibility does not absolutely preclude a different decision on appeal, at which time the issues may have been more clearly framed by the evidence adduced at trial. Nevertheless, judicial efficiency demands that this court accord great deference to its pretrial decisions on admissibility, unless it is apparent, in light of the subsequent trial record, that the determination was patently erroneous and produced an unjust result.

*See also State v. Cash*, 03-853 (La.App. 3 Cir. 12/10/03), 861 So.2d 851, *writs denied,* 04-27 (La. 4/30/04), 872 So.2d 472 and 04-232 (La. 5/7/04), 872 So.2d 1080.

Accordingly, the law of the case doctrine applies, and this assignment of error is without merit.

Polygraph Results

Defendant alleges that this court erred when it affirmed the trial court's ruling that results of polygraph testing of two persons were inadmissible at trial. Defendant sought to admit the polygraph tests as a means of impeaching the lead detective's trial testimony. Again, the doctrine of the law of the case applies. *See Humphrey*, 412 So.2d at 523. There is nothing in the record before this court that would indicate that its prior ruling was erroneous and produced an unjust result.

Suppression Hearing Transcript

Defendant asserts that the trial court erred when it permitted the State to introduce at trial a transcript of a suppression of evidence hearing. At that hearing, Guy Weber, a sergeant with the Jacksonville Sheriff's Office, testified regarding

Defendant's apprehension in Florida. Sergeant Weber was later deployed to Iraq. Defendant also argues that the trial court failed to redact prejudicial portions of the transcript that were highly detrimental to Defendant's defense and, therefore, inadmissible.

On July 26, 2007, Defendant filed a "Prieur Demand for Notice of all Bad Acts That May be Used Against Jonathan Boyer at His Trial." On January 16, 2008, the State filed a response to Defendant's *State v. Prieur,* 277 So.2d 126 (La.1973), request asserting that it did not intend to introduce evidence of crimes or bad acts of Defendant other than crimes or acts "which are a part of the continuing transaction of the offense for which the defendant is charged."

On January 22, 2008, Defendant filed a "Motion to Suppress Statement" alleging that Defendant's apprehension and detention in Florida were illegal, that his confession was involuntary and not freely made and that as a result, any statements must be suppressed.

On April 26, 2008, a hearing was held on various motions filed by Defendant, including the motion to suppress his confession. At the hearing, Sergeant Weber testified regarding his involvement in the apprehension of Defendant prior to Defendant's interrogation by Louisiana police officers that resulted in a confession.

Sergeant Weber testified that he and a team of officers were advised that Defendant had been seen at a certain location in Jacksonville. They were warned that he was armed and that he said he would not be taken alive. They were told that Defendant was wanted for an execution-style murder. The officers were sent to arrest Defendant on the Louisiana warrant. He stated that when he and his partner, Detective Jackson Short, encountered Defendant walking on the street, he got out of the car and

pursued Defendant while his partner drove ahead to prevent Defendant from escaping. Sergeant Weber testified that Defendant pulled a gun out of his waistband and approached him as if to shoot him. Sergeant Weber shot at Defendant twice from close range. However, Defendant tripped and fell, unhurt, and the sergeant covered him until his partner returned and handcuffed Defendant. Sergeant Weber testified that Defendant was arrested for assault on a police officer because he had threatened him with the gun.

Detective Short, Sergeant Weber's partner, testified that he saw Defendant struggle to get something out of his waistband, which he thought was a gun. Although he never actually saw the gun in Defendant's hand, he testified that a gun was found close to where Defendant was handcuffed on the ground and extra bullets were recovered from his person. Neither officer had any further involvement with Defendant.

On September 17, 2009, Defendant filed an *In Limine* Motion to Exclude Transcript of Testimony, asserting that he had learned that the State intended to use the transcript of Sergeant Weber's testimony at trial because Sergeant Weber had been deployed to Iraq and thus was unavailable to testify at trial. Defendant noted that Sergeant Weber was the only officer involved in the capture of Defendant who stated that he saw Defendant brandish a gun. Defendant asserted that because this testimony came out during the suppression hearing, he had not adequately cross-examined the witness:

> . . . on the credibility of Detective Weber in his application of force against Mr. Boyer; the defense did not cross-examine him thoroughly regarding his ability to see Mr. Boyer with any weapon; and the defense conducted an entirely truncated examination regarding the position of Jackson Short during this time frame, and Detective Short's position at the time that he allegedly observed Mr. Boyer with the handgun.

14

A hearing was held on September 22, 2009, regarding Defendant's opposition to the State's intention to introduce a transcript of the sergeant's suppression hearing testimony at trial. Following argument, the trial court denied Defendant's motion to exclude the transcript in its entirety.

In his brief to this court, Defendant argues that the trial court relied on "an erroneous and outdated 1974 formulation by the Louisiana Supreme Court of five prerequisites to the admission of prior testimony." At the hearing, the trial court cited *State v. Woodberry*, 95-2402, pp. 7-8 (La.App. 4 Cir. 12/27/96), 686 So.2d 984, 989, *writ denied,* 97-277 (La. 6/20/97), 695 So.2d 1351, which set forth the requirements for admission of the prior testimony of an unavailable witness at a subsequent trial, as follows:

> Our Supreme Court in *State v. Kaufman,* 304 So.2d 300, 304 (La.1974), *cert. denied,* 429 U.S. 981, 97 S.Ct. 495, 50 L.Ed.2d 591 (1976), enunciated the following requirements necessary before an absent witness' prior testimony is admissible at a subsequent trial: 1) the defendant must have been represented by counsel at the earlier hearing; 2) the witness testified under oath; 3) the witness was cross-examined, or else there was valid waiver of the right to cross-examination; 4) at the time of trial, the witness (whether out-of-state or not) is unavailable or unable to testify; and 5) the state has made a good-faith diligent effort to obtain the presence of the witness, including by its out-of-state subpoena powers where appropriate. See also, *State v. Robinson,* 423 So.2d 1053, 1058 (La.1982); *State v. Hills,* 379 So.2d 740, 743-744 (La.1980); *State v. West*, 363 So.2d 513, 516 (La.1978).

> Once the prosecution establishes witness unavailability, that witness' previous testimony is admissible if it bears adequate "indicia of reliability" which is borne out by an adequate opportunity to cross-examine the witness and whether counsel availed himself of that opportunity. These two requirements afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement. *Ohio v. Roberts*, 448 U.S. 56, 66-75, 100 S.Ct. 2531, 2539-2543, 65 L.Ed.2d 597 (1980); *Mancusi v. Stubbs,* 408 U.S. 204, 214-218, 92 S.Ct. 2308, 2314-2315, 33 L.Ed.2d 293 (N.Y.1972); *California v. Green,* 399 U.S. 149, 155-163, 90 S.Ct. 1930, 1933-1937, 26 L.Ed.2d 489 (Cal.1970); *State v. Adams,* 609 So.2d 894, 896 (La.App. 4th Cir.1992).

Defendant argues that *Woodberry* requires only that the witness be cross-examined or that there be a valid waiver of the right to cross-examination. "This is to be contrasted with the requirement expressed by the Louisiana legislature in 1988 that the defendant 'had an opportunity **and similar motive** to develop the testimony by direct, cross, or redirect examination.' La.C.E. art. 804(B)(1)." Louisiana Code of Evidence Article 804(B)(1), in pertinent part, provides:

> **B. Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> **(1) Former testimony**. Testimony given as a witness at another hearing of the same or different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a party with a similar interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

The trial court found that all the required considerations of *Woodberry* were present. While not specifically addressing the "similar motive" requirement, the trial court further cited *State v. Ball,* 00-2277 (La. 1/25/02), 824 So.2d 1089, *cert. denied,* 537 U.S. 864, 123 S.Ct. 260 (2002) in support of its ruling. In *Ball,* while discussing the requirements to admit prior testimony of an unavailable witness, the supreme court noted:

> La.Code Evid. art. 804(B)(1) provides, as does its federal counterpart, Fed. R.Evid. 804(b)(1), an exception to the hearsay rule for testimony given by an unavailable declarant as a witness in another hearing of the same or a different proceeding, "if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." La.Code Evid. art. 804(B)(1) incorporates a firmly-rooted exception to the hearsay rule. *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895).
>
> Determining the unavailability of a witness is a preliminary question for the court. La.Code Evid. art. 104(A). Such determinations are reviewed for manifest error, and will not be overturned, absent an abuse of the trial court's discretion. This Court has held that use of the

16

prior testimony must not impinge on the defendant's constitutional right to confront and cross-examine adverse witnesses, as guaranteed by the Sixth Amendment of the United States Constitution, Art. I, § 16 of the Louisiana Constitution, and La.Rev.Stat. § 15:273. *State v. Hills,* 379 So.2d 740, 743-44 (La.1980)*; see also State v. Pearson*, 336 So.2d 833, 835 (La.1976); *State v. Ghoram,* 328 So.2d 91, 93-94 (La.1976). To protect these constitutional rights, certain conditions must be met before the prior testimony may be introduced: (1) the defendant must have been represented by counsel at the earlier hearing; (2) the witness must have testified under oath; (3) the witness must have been cross-examined (or there must have been a valid waiver of the right to cross-examination); (4) at the time of trial, the witness must be "unavailable" to testify; and (5) the State must have made a good faith effort to locate the unavailable witness. *Hills,* 379 So.2d at 743-44. These jurisprudential criteria are subsumed in La.Code Evid. art. 804(B)(1), permitting the use of prior recorded testimony of an unavailable declarant as an exception to the hearsay rule.

*Id.* at 1111-12.

Accordingly, the trial court did not use an outdated standard to determine whether the sergeant's prior testimony was admissible at trial. However, the trial court did not address Defendant's argument that he would have conducted a different and more effective cross-examination of the sergeant regarding the allegation that Defendant possessed a gun and threatened the sergeant in an attempt to escape capture. In this respect, Defendant argues that his constitutional right to due process and to confront the witness was violated. Defendant argues:

In the present case Mr. Boyer did not have a similar motive for his cross-examination. The issues before the court on suppression were the voluntariness of the confessional statement of Mr. Boyer and of his waiver of his rights to silence and to counsel. This was the focus of the cross-examination and defense counsel was not motivated to challenge the veracity or accuracy of the account of Det. Weber at the lower burden of a suppression hearing or in a manner that would preview any questioning at trial. Similarly, in the absence of a jury, defense counsel was in no way motivated to avoid eliciting harmful testimony or using phrases and questioning that would be prejudicial before a jury.

In *State v. Jones*, 00-2837 (La. 6/29/01), 791 So.2d 622, the supreme court discussed "similar motive" when considering whether to admit prior testimony of an

unavailable witness. In *Jones*, in a prior proceeding, the trial court had held that the transcript of the unavailable witness was admissible at trial. However, following a grant of a motion for mistrial, the trial court determined that because prior statements had been withheld from defense, defense counsel's cross-examination of the deceased witness was motivated by different concerns than he would have had at trial, thus the suppression transcript containing the deceased witness's testimony could not be admitted at trial. The supreme court reversed the trial court's ruling, stating:

> In the present case, before the state's disclosure of Artberry's prior statements, the trial court, court of appeal, and this Court had all rejected respondent's argument that La.C.E. art. 804(B)(1) did not apply to Artberry's testimony at the suppression hearing because defense counsel was motivated by different concerns at that proceeding than he would have been at trial. *See United States v. Salerno*, 505 U.S. 317, 326, 112 S.Ct. 2503, 2509, 120 L.Ed.2d 255 (1992) (Blackmun, J., concurring) ("Because 'similar motive' does not mean 'identical motive,' the similar motive inquiry ... is inherently a *factual* inquiry, depending in part on the similarity of the underlying issues and on the context of the [prior] questioning."); 2 *McCormick on Evidence*, § 304, p. 296 (5th ed., John W. Strong, ed. 1999) ("The requirement has become, not a mechanical one of identity or even of substantial identity of issues, but rather that the issues in the first proceedings, and hence the purpose for which the testimony was offered, must have been such as to produce an adequate motive for testing on cross-examination the credibility of the testimony.") (footnote omitted).

*Id.* at 625.

In the current case, we find that defense counsel was motivated at trial by issues similar to those at the suppression hearing. At the suppression hearing, Defendant sought to suppress the confession that he was the one who shot and killed Marsh. He asserted that the confession was not freely and intelligently made because of his psychological condition, including that he had just almost been killed by one of the Florida officers. At trial, Defendant argued that there was a likelihood that his brother was the perpetrator of the offense and that he only confessed to the killing

18

because of "the extremely traumatic circumstances of having nearly been shot to death by Florida Police, compounded by Mr. Boyer's mental health problems and the evidence of psychiatric disturbance after the statement was taken."

In the current case, the issue at the suppression hearing was Defendant's confession, and, at trial, Defendant argued that the confession was involuntarily made. During the suppression hearing, Defendant extensively cross-examined both Florida officers regarding the capture incident. He questioned the one officer regarding his shooting at Defendant, both officers regarding their positions during the incident, and asked about Defendant's behavior following the incident. In his closing argument at trial, defense counsel argued: "Jonathan Boyer did not shoot Bradlee Marsh; Jonathan Boyer just said that he shot Bradlee Marsh. This is the difference I told you about at the start of this case; it's still the difference now, the difference between doing something and saying you did something." Moreover, while Sergeant Weber was not available, Detective Short testified at trial regarding the capture. Therefore, the trial court did not err when it allowed the transcript of the unavailable officer's testimony to be admitted at trial.

At the trial court's suggestion, however, the State agreed to allow Defendant to redact certain portions of the transcript. On September 24, 2009, Defendant filed a motion to exclude portions of the transcript of Weber's testimony. In his motion, Defendant sought to exclude any mention of a gun, that Defendant reached into his waistband as if he were grabbing a gun, that he possessed additional ammunition, that Sergeant Weber was afraid for his life, that Defendant was arrested for assault on a police officer, and that he was wanted in Louisiana for an execution-style murder. Defendant further sought to preclude any information about the sergeant's job

description which would indicate that it was a high risk operation and any mention of an arrest warrant or a wanted poster.

A hearing was held on September 25, 2009, regarding redaction. Following discussion, the trial court redacted testimony regarding an execution-style murder, that it was speculated that Defendant was armed and dangerous, that he had extra ammunition on his person, and that he had stated he would not be taken alive. The trial court also redacted the fact that Defendant was arrested by Florida authorities for assault on a police officer which was committed during his apprehension.

Defendant, however, argues that the trial court erred when it found admissible the testimony regarding his being in possession of a gun that was not the gun which allegedly killed the victim. Defendant argues that it was "other crimes" or "bad acts" evidence such that is normally precluded and that the State failed to file adequate notice of its intent to use said evidence as required by *Prieur*. Louisiana Code of Evidence Article 404(B)(1) provides:

> Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

During trial, outside the presence of the jury, the State argued that the testimony regarding the apprehension of Defendant and the fact he was in possession of a hand gun at the time was *res gestae* or an integral part of the robbery and murder of the victim. Defendant argued that the evidence was "enormously prejudicial" and, therefore, should be excluded. The trial court ruled that the evidence of the hand gun

20

was admissible as an integral part of the act or transaction. The trial court relied on *State v. Williams*, 00-1277 (La.App. 3 Cir. 2/28/01), 779 So.2d 1106. In *Williams,* this court permitted the introduction of a hand gun found following an arrest in the defendant's home for possession of crack cocaine.

Defendant argues that *Williams* is distinguishable from the present case in that the police entered Williams' home and arrested her and, subsequent to the arrest, searched the home and found the gun. Defendant points out that the locating of the gun was immediate and at the same location wherein the drugs were also found. In brief, Defendant argues that the Louisiana Supreme Court in *State v. Taylor*, 01-1638, p. 10 (La. 1/14/03), 838 So.2d 729, 741, *cert. denied,* 540 U.S. 1103, 124 S.Ct. 1036 (2004), emphasized that for evidence to be an "integral part" of the offense, there were certain requirements:

> A close proximity in time and location is required between the charged offense and the other crimes evidence "to insure that 'the purpose served by admission of other crimes evidence is not to depict defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.'" *State v. Colomb*, 98-2813, p. 3 (La. 10/1/99), 747 So.2d 1074, (quoting *State v. Haarala*, 398 So.2d 1093, 1098 (La.1981).

Defendant argues that "[t]he trial court took an erroneously broad approach to the 'integral part' exception to the bar of other crimes evidence when it extended this exception to the arrest of the defendant in Florida a month after instant offense in possession of a gun wholly unrelated to the present offense."

In *Taylor*, the defendant went on a seven-day crime spree which started in the State of Iowa and ended at the American/Mexican border where he was finally captured. The state presented evidence of all the crimes committed after he fled Iowa. The trial court found that all of the crimes were admissible as *res gestae* evidence:

> *Res gestae* events constituting other crimes are deemed admissible because they are so nearly connected to the charged offense that the state could not accurately present its case without reference to them. A close proximity in time and location is required between the charged offense and the other crimes evidence "to insure that 'the purpose served by admission of other crimes evidence is not to depict defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.'" *State v. Colomb*, 98-2813, p. 3 (La.10/1/99), 747 So.2d 1074, 1076 (quoting *State v. Haarala*, 398 So.2d 1093, 1098 (La.1981)). The *res gestae* doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed during or after the commission of the crime if a continuous chain of events is evident under the circumstances. *State v. Huizar*, 414 So.2d 741, 748 (La.1982); *State v. Kimble*, 407 So.2d 693, 698 (La.1981). In addition, as this court recently observed, integral act (*res gestae*) evidence in Louisiana incorporates a rule of narrative completeness without which the state's case would lose its "narrative momentum and cohesiveness, 'with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.'" *Colomb*, 747 So.2d at 1076 (quoting *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997).

*Id.* at 741-42.

In the current case, Defendant fled to Jacksonville, Florida within a few days after the shooting. Evidence of flight, concealment, and attempt to avoid capture is relevant to show consciousness of guilt from which a jury may use to reach a verdict, and may also include another crime or bad acts. *State v. Davies,* 350 So.2d 586 (La.1977). *See also State v. Burbank*, 07-125 (La.App. 5 Cir. 10/30/07), 971 So.2d 1173, *writ denied,* 07-2287 (La. 4/25/08), 978 So.2d 364.

Under the circumstances of the case, the trial court did not commit error when it granted the State leave to use the transcript of the suppression hearing to present Sergeant Weber's testimony to the jury as the concerns at the suppression hearing and the trial were substantially similar. Moreover, the trial court redacted any non-relevant and prejudicial hearsay evidence from the transcript. Defendant's capture

22

was sufficiently connected to the charged offense such that the State could not adequately present its case without reference to the appearance of a handgun in Defendant's possession. When Defendant saw the officers approaching, he produced a weapon and attempted to flee again, thereby exhibiting a guilty mind.

Motion to Suppress

Defendant asserts that the trial court erred when it denied his suppression motion regarding the confession made to Detectives Cuadeur and Leslie Blanchard in Florida shortly after he was apprehended. Defendant argues that the confession was not freely given or intelligently made.

> Before a confession may be introduced into evidence, "it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." La. R.S. 15:451. The state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession at a hearing on a motion to suppress. *State v. Coleman*, *supra; State v. Hills,* 354 So.2d 186 (La.1977). The state must also affirmatively prove that the defendant was first advised of his *Miranda* rights and that the confession was not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. *State v. Johnson*, 36,01 (La.App.2d Cir.6/12/02), 821So.2d 652. The testimony of the interviewing police officer alone may be sufficient to prove the defendant's statement was given freely and voluntarily. *State v. Trotter*, 37,325 (La.App.2d Cir.8/22/03), 852 So.2d 1247, *writ denied*, 2003-2764 (La.2/13/04), 867 So.2d 689, *recon. denied*, 2003-2764 (La.4/23/04), 870 So.2d 282; *State v. Henderson,* 31,986 (La.App.2d Cir.8/18/99), 740 So.2d 240.

> In *State v. Jackson,* 381 So.2d 485 (La.1980), and *State v. Morvant*, 384 So.2d 765 (La.1980), the Louisiana Supreme Court stated the principles under which the admissibility of a confession must be judged. As a matter of federal constitutional law, a confession obtained by any direct or implied promises, however slight, or by the exertion of any improper influence, must be considered involuntary and inadmissible. *See Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897) and *State v. Roddy*, 33,112 (La.App.2d Cir.4/7/00), 756 So.2d 1272, *writ denied,* 2000-1427 (La.5/11/01), 791 So.2d 1288.

> The admissibility of a confession is a question for the trial court, whose conclusions on the credibility and weight of testimony relating

23

> to the voluntary nature of the confession will not be overturned on appeal unless not supported by the evidence. *State v. Coleman, supra*; *State v. Thibodeaux,* 98-1673 (La.9/8/99), 750 So.2d 916, *cert. denied*, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000). Because the trial court has the opportunity to observe the witnesses and assess their credibility, we place great weight on its factual determinations. *State v. Crews*, 28,153 (La.App.2d Cir.5/8/96), 674 So.2d 1082.

*State v. Roshell,* 40,374, pp. 5-7 (La.App. 2 Cir. 12/14/05), 916 So.2d 1268, 1271-72, *writ denied,* 06-771 (La. 10/6/06), 938 So.2d 69.

At the suppression hearing, the detectives testified that they *Mirandized* Defendant at the Jacksonville Police Department before they began their interrogation and had Defendant sign a "Your Miranda Rights" form. They stated that they spoke with him for about two hours, then audiotaped his statement. After they began taping, they reviewed the "Your Miranda Rights" form on the tape. On the audiotape, Defendant agreed with all the provisions of the waiver and stated that he was making the statements voluntarily, without any form of coercion.

Following the hearing on Defendant's motion to suppress the statements, the trial court took the matter under advisement. On May 1, 2008, the trial court issued written reasons for denial, ruling that the State met its burden of proving that the statements were voluntarily, intelligently, and freely given.

While the State had the burden of proving the admissibility of the confession at the motion hearing, Defendant had the burden of proving the grounds for his motion. La.Code Crim.P. art. 703(D). In brief, Defendant argues that "[g]iven the extremely traumatic circumstances of having nearly been shot to death by Florida police, compounded by Mr. Boyer's mental health problems and the evidence of psychiatric disturbance after the statement was taken, the State did not meet its burden of showing Mr. Boyer's statement was free and voluntary."

24

We find that the State met its burden of proof and that Defendant did not. In *State v. Freeman,* 94-1132, p. 6 (La.App. 3 Cir. 4/5/95), 653 So.2d 801, 804-05, *writ denied,* 95-1156 (La. 10/6/95), 661 So.2d 464, while discussing whether the defendant's confession was voluntary, this court stated:

> This court and the Louisiana Supreme Court have held that a confession, which is challenged on the ground that the accused was chemically impaired at the time of interrogation, will be rendered inadmissible only when the impairment is of such a degree that it negated defendant's comprehension and rendered him unable to understand the consequences of his statement. *State v. Robinson,* 384 So.2d 332, 335 (La.1980); *State v. Brooks,* 505 So.2d 245, 247 (La.App. 3d Cir.1987). Whether the impairment exists and is of a degree sufficient to vitiate the voluntariness of a confession is a question of fact, and the trial judge's findings will not be overturned unless they are not supported by the evidence. *Id.*

*See also State v. Guidry,* 94-678 (La.App. 3 Cir. 12/7/94), 647 So.2d 502, and *State v. Coutee*, 07-568 (La.App. 3 Cir. 10/31/07), 970 So.2d 72, *writ denied,* 08-07 (La. 5/16/08), 980 So.2d 708.

At the suppression hearing, Defendant asked the two detectives if they were aware that he had been shot at by police officers and whether they were aware that he was placed on a suicide watch by the Jacksonville police shortly after they finished with their interrogation. Both detectives stated that they had known shots were fired, but were not aware that Defendant had been considered suicidal. A review of the audiotape of the interrogation showed that Defendant answered questions calmly and clearly and never mentioned the fact that he was shot at by the police. No evidence of Defendant's assertion that he became suicidal after the questioning was admitted at the suppression hearing. There is nothing in the record before this court to indicate that Defendant did not understand what he was saying or that he did not understand

25

the consequences of his statements. Defendant's confession that he shot Bradlee Marsh was freely and voluntarily made.

Finally, Defendant asserts that the confession should have been suppressed because the taped confession was not admitted in its entirety. At the suppression hearing, it was established that the time the taping commenced was 1:48 p.m. and that it ended at 2:30 p.m. However, the length of the taped confession was approximately twenty-eight minutes. At the hearing, Defendant questioned the missing fourteen minutes of the tape. The detectives explained that the audiotaping device was voice activated and that when persons were not speaking, the tape stopped recording. The detectives stated that they did not remember long periods of silence, but that there were many pauses between questions and answers. We have reviewed the audiotape. The breaks or pauses between the questions and answers can be heard as a click on the tape. However, the discussion appeared coherent and consistent. We conclude that the confession was admitted in its entirety.

Speedy Trial

Defendant argues in brief that he "was tried in violation of his statutory and constitutional speedy trial rights." He argues that this court erred when it ruled that his rights were not violated and contends that this issue should be revisited.

This court's ruling that there was no error in the trial court's denial of the motion to quash was affirmed by the supreme court on November 16, 2007. If the three-year time limitation is applied, then the State had until November 16, 2010, in which to take Defendant to trial. If the two-year time limitation is applied, the State had until November 16, 2009. Defendant was convicted on September 29, 2009. Therefore, whichever time period applies, there was no statutory speedy trial violation

in this case for the second degree murder conviction or the armed robbery conviction. La.Code Crim.P. art. 701.

However, in *State v. Butler,* 615 So.2d 496, 499 (La.App. 3 Cir. 1993), *writ denied*, 94-634 (La. 6/28/96), 675 So.2d 1107, this court noted: "There are two separate and distinct bases for defendant's right to a speedy trial, a statutory right created by La.C.Cr.P. art. 701 and a constitutional right embodied in the Sixth Amendment to the United States Constitution and Article 1, Section 16 of the Louisiana Constitution." Furthermore, "[t]he constitutional right to a speedy trial is not dependent on filing a motion." *Id.* In *State v. Love,* 00-3347, p. 17 (La. 5/23/03), 847 So.2d 1198, 1211, the supreme court stated that "analysis of the length of the delay does not stop with a finding that the State did not violate the statutory provisions, because the right to a speedy trial is a fundamental right."

This court affirmed the trial court's denial of the July 7, 2005 motion to quash based on its finding that there was no statutory violation of Defendant's right to a speedy trial. The issue was whether the "funding crisis" was a "cause beyond the control of the state," as set out by La.Code Crim.P. art. 579(A)(2). There was no finding that there was not a state or federal constitutional speedy trial violation by this court or by the trial court, then or now. *See Boyer*, 07-85 (La.App. 3 Cir. 8/22/07).

In *State v. Van Dyke,* 03-437, pp. 9-11, 20, 22-23 (La.App. 3 Cir. 10/1/03), 856 So.2d 187, 193-94, 199, 201, *writ denied*, 03-2777 (La. 2/13/04), 867 So.2d 689, this court thoroughly discussed the factors which should be used to determine whether there was a constitutional speedy trial violation:

> In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court identified four factors which should be used to determine whether a particular defendant has been deprived of his

27

right to a speedy trial:  the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

*Length Of The Delay*

In *Barker*, the Supreme Court discussed the length of the delay as follows:

> The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of the delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.

*Id.* at 530-31, 92 S.Ct. 2182.

In *Barker*, the Supreme Court found that an over five year delay between the defendant's arrest and trial was "extraordinary." *Id.* at 533, 92 S.Ct. 2182. This court has previously held a three-year delay between arrest and the time of trial is presumptively prejudicial. *State v. Ellis*, 94-1106 (La.App. 3 Cir. 3/1/95), 651 So.2d 949.

. . . .

In *Barker*, the Supreme Court stated the following regarding the reason for the delay:

> Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Id.* at 531, 92 S.Ct. 2182.

. . . .

*Defendant's Assertion of His Right*

In the following passage, the Supreme Court discussed a defendant's assertion of his right to a speedy trial in *Barker*:

> We have already discussed the third factor, the defendant's responsibility to assert his right. Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that a failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

*Id*. at 531-32, 92 S.Ct. 2182.

. . . .

*Prejudice*

The fourth factor to be considered in assessing whether a defendant's constitutional right to a speedy trial has been violated is whether the defendant has been prejudiced. In *Barker*, (footnotes omitted), the Supreme Court stated:

> A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests:  (I) to prevent oppressive pretrial incarceration;  (ii) to minimize anxiety and concern of the accused;  and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent. Finally, even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.

*Id.* at 532-33, 92 S.Ct. 2182.

In *Van Dyke*, 856 So.2d 187, this court did not find that the defendant's state or federal constitutional right to a speedy trial was violated even though he was incarcerated for six years and five months from the time of the original indictment for first degree murder to the trial court's grant of a motion to quash. Van Dyke was originally indicted in 1996. In May 2002, the indictment was initially quashed because one of the grand jurors was unqualified at the time to serve. In September 2002, he was reindicted for second degree murder. In December 2002, Van Dyke moved to quash the second indictment based on his constitutional right to a speedy trial. The trial court granted the motion. The State appealed.

Reviewing the *Barker* factors, this court noted that, at the hearing on Van Dyke's motion to quash the indictment due to a speedy trial violation, testimony established that a lack of funding, as in the current case, "created a dilemma in the 'system' such that it is difficult to secure certified counsel to represent indigent

defendants. In the matter before us, however, the vast majority of the delays are attributable to the defense." *Id*. at 199. This court stated:

> In assessing the reasons for the delay, we disagree with the trial court's conclusion that none of the delays were attributable to the defense. There have been numerous defense motions filed throughout the life of this case, some of which have yet to be ruled upon. Since September 2000, defense counsel has requested three separate continuances as to the trial fixing and a continuance for a hearing on pre-trial motions.

*Id*.

This court further noted that, as in the current case, Van Dyke was not very aggressive in his assertion of his speedy trial rights. He did not file the motion prior to the expiration of the time limitation. Furthermore, Van Dyke failed to show prejudice. Although an eyewitness had died in the meantime, the defendant failed to establish that the eyewitness was crucial to his case. This court noted:

> As stated by the supreme court in *Alfred,* 337 So.2d 1049 [1976], incarceration and the deprivation of liberty resulting therefore is always prejudicial. According to *Barker*, the most serious consideration is impairment of the defense.

*Id.* at 203.

The length of the delay in the instant case was presumptively prejudicial. Defendant was arrested on March 8, 2002, and indicted on June 6, 2002, for first degree murder. The charge was reduced in May 2007 to second degree murder. He was convicted of second degree murder and armed robbery with a firearm on September 29, 2009, more than seven years after his arrest. Defendant was incarcerated the entire time. As noted above in *Barker*, the Supreme Court found a five-year delay to be "extraordinary." In *State v. Love,* 00-3347, p. 17 (La. 5/23/03), 847 So.2d 1198, 1211, the supreme court agreed that twenty-two months could be unacceptable considering the circumstances and the complexity of the case.

The largest part of the delay involved the "funding crisis" experienced by the State of Louisiana. It is the court's duty to identify funds and the state's duty to fund the defense, which may involve large amounts of money in first degree murder cases, particularly where the death penalty is sought, as was in the current case. *See State v. Wigley,* 624 So.2d 425 (La.1993); *State v. Citizen*, 04-1841 (La. 4/1/05), 898 So.2d 325; and *State v. Reeves,* 06-2419 (La. 5/5/09), 11 So.3d 1031, *cert. denied,* ___ U.S. ___, 130 S.Ct. 637 (2009).

Defendant was arraigned on September 9, 2002. Trial was scheduled for February 3, 2003. Defendant filed a motion to determine the source of funds in November 2002, and the first hearing on the motion took place on August 15, 2003, at which time the hearing was continued. Thereafter, the only matters that came before the trial court concerned the source of funding.

Defendant filed his motion to quash on July 7, 2005, one month after the three-year statutory time limitation tolled, and a hearing was held on November 20, 2006, wherein the trial court denied the motion. Subsequently, this court affirmed the trial court's ruling. *Boyer,* 07-85 (La.App. 3 Cir. 8/22/07).

On May 21, 2007, the State reduced the charge from first degree murder to second degree murder, which removed the obstacle of lack of funding, and on the same date, Defendant was arraigned on the charge of armed robbery with a firearm. Trial was scheduled for October 29, 2007.

On June 26, 2007, Defendant filed fifteen motions, which included discovery motions, evidentiary motions, and a motion to recuse the assigned judge. On September 7, 2007, a hearing was held on Defendant's motion to recuse, which was granted. Trial was refixed for February 11, 2008.

On January 22, 2008, Defendant filed more than twenty more motions, which included additional discovery motions, evidentiary motions, a motion to quash on constitutional grounds, a motion to quash on statutory grounds, and several motions concerning trial procedures.

On January 28, 2008, several of Defendant's motions were heard and ruled upon. On February 22, 2008, the State moved for a continuance of the trial. Defendant did not oppose the motion, and trial was continued until March 20, 2008.

On April 29, 2008, several of Defendant's motions were heard and ruled upon. On May 19, 2008, more of Defendant's motions were heard and ruled upon.

On July 18, 2008, a sanity commission was appointed. On September 9, 2008, Defendant was found to be incompetent and unable to proceed to trial. On April 15, 2009, it was determined that Defendant was competent and able to proceed to trial.

On September 11, 2009, and September 21, 2009, the remainder of Defendant's motions were heard and ruled upon. Trial commenced on September 22, 2009.

The majority of the seven-year delay was caused by the "lack of funding." Following the reduction of the first degree murder to second degree murder in May 2007, it was two years and four months until the trial. During that time, Defendant filed more than thirty motions to be litigated, including two motions to recuse the trial judge and several evidentiary motions which required testimony from witnesses. However, the motions filed by Defendant appeared to be legitimate motions and not filed for the purpose of delay of trial, and Defendant's incompetency to proceed to trial for a period of nine months cannot be attributed to either the State or Defendant as a delaying tactic. The State filed only one motion to continue hearing, which was unopposed by Defendant.

33

While the incident before the trial court was a very serious offense, it was not overly complicated. Defendant confessed to the crime. His brother, who was at the scene, testified that Defendant killed the victim. But for the procedural problem, lack of funding for a capital case, the case would have progressed in a timely manner. When the procedural bar was eliminated and in spite of over thirty motions filed by Defendant, the matter was brought to trial within two years and four months. Furthermore, the newly reset time limitation was interrupted again by Defendant's adjudicated incompetency. La.Code Crim.P. art. 579(A)(2). Defendant was adjudicated competent to proceed to trial in April 2009, and the trial commenced six months later.

Defendant did not assert his state and federal right to a speedy trial until after the three year statutory prescription had tolled. *Boyer*, 07-85 (La.App. 3 Cir. 8/22/07). During the three-year time limitation period the only consideration addressed was the funding issue. His first motion was filed in July 2005. Following the amendment of the indictment and arraignment on the armed robbery charge in May 2007, and the setting of the trial date for October 2007, he did not assert the right again until January 2008.

> Failure to assert his right to a speedy trial soon after the arraignment is persuasive that he anticipated no prejudice in presenting his defense. Furthermore, defendant made no objection to any of the continuances and, in fact joined in one continuance after he had filed his motion to quash, asserting his right to a speedy trial.

*State v. Labrano,* 363 So.2d 427, 429 (La.1978).

In the current case, with more than a year in between the filing of the two motions to quash, Defendant's assertions of the statutory and speedy trial rights were more perfunctory than aggressive.

34

Defendant alleges that the seven-year pretrial incarceration severely prejudiced his case in that he lost his job, suffered a mental breakdown, became psychotic, and was unable to assist with his defense. Moreover, witnesses died or disappeared. Defendant refers to affidavits offered with his motion to reconsider the denial of his speedy trial motion, wherein his investigator outlined her attempts to locate several witnesses to no avail.

Defendant did not relate the substance of the missing witnesses' anticipated testimonies either at the April 19, 2008 hearing on his January 2008 motion to quash or in brief to this court. Except for the two witnesses discussed below, Defendant did not reveal the contents of the unavailable witnesses' testimonies or how the evidence would have affected the outcome of the trial. *See State v. Cole*, 384 So.2d 374 (La.1980), *cert. denied*, 449 U.S. 1076, 101 S.Ct. 855 (1981). As for the two witnesses, William Gallier and Russell Clement, the statements they made to the police were determined to be inadmissible hearsay and were disallowed by the trial court.

Defendant argues that the long incarceration caused his mental breakdown. In *Alfred*, 337 So.2d 1049, the defendant was indicted for two first degree murders. After discussing each *Barker* factor, the supreme court did not find that the defendant's speedy trial rights were violated. The supreme court stated:

> The anxiety and concern suffered by the accused and the disruption of his family life by the charge and incarceration are factors to be considered. Loss of his job is another. But defendant has not alleged disruption of his family life, and the record does not shed light on whether he had a job. Deprivation of liberty which results from incarceration is always prejudicial. But this prejudice, like other[s], is a necessary consequence of any valid criminal charge, especially where the accusation involves first degree murder, a non-bailable offense.

> The amorphous quality of the right to a speedy trial leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived. This is indeed a serious consequence because, unlike the exclusionary rule or the reversal for a new trial, it means that a defendant who may be guilty of a serious crime, or two as in this case, will go free without having been tried. Overzealous application of this remedy would infringe 'the societal interest in trying people accused of crime, rather than granting them immunization because of legal error …' *United States v. Ewell*, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966), White, J. Barring extraordinary circumstances, courts should be reluctant indeed to rule that a defendant has been denied a speedy trial. In none of this Court's decisions since *Barker v. Wingo* has a defendant been released for this reason.

*Id.* at 1057.

Defendant further asserts that he lost his job because of the prosecution. After the shooting, Defendant fled to Florida. It is not revealed to what job Defendant refers, the one he left in Louisiana when he fled to Jacksonville, Florida, or the one that he had in Florida. There was no testimony that Defendant was working when he was arrested in Jacksonville a month after the shooting.

Defendant also argues that because of the long delay, he was denied effective assistance of counsel, "who could make a relatively contemporaneous assessment of the crime scene, of Mr. Boyer's functioning and could consult with Mr. Boyer while events were fresh in his mind. . . . the forensic trail was cold and the opportunity to meaningfully examine the scene and the truck was gone."

At the initial arraignment, Tom Lorenzi was appointed to represent Defendant. On September 9, 2002, Steven Singer was appointed as second chair counsel. Lorenzi represented Defendant from June 2002 until May 2007, when the first degree murder charge was reduced and the armed robbery charge was added. At that time, Lorenzi was relieved, and James Burks was appointed to represent Defendant. Between July 19, 2007, and September 7, 2007, various other attorneys from the Public Defenders

36

Office represented Defendant, including Rachel Jones, Steven Coward, and Christine Lehmann. Jones appeared primarily for Defendant during this period and argued many of the motions filed on his behalf. On April 29, 2008, Richard Bourke joined Jones in representing Defendant. From April 15, 2009 up to and through trial, post-trial, sentencing, and the current appeal, Bourke primarily represented Defendant.

Based on the facts in the current case and the above jurisprudence, this court finds that Defendant's constitutional speedy trial rights were not violated. While most certainly the more than seven years from date of arrest to trial was presumptively prejudicial, the remaining *Barker* factors were not present such as to support the quashing of the indictment for second degree murder or the bill of information charging Defendant with armed robbery with a firearm.

The first three years he was incarcerated, Defendant was charged with first degree murder, which was a non-bailable offense, and the progression of the prosecution was "out of the State's control" as determined by this court and the supreme court. Once the interruption ceased, Defendant filed more than thirty motions, which caused suspensions of the time limitation until all were addressed and ruled upon, and he was adjudicated incompetent to proceed, which again interrupted the time limitation. Defendant was charged with a serious crime, murder, and there is nothing before this court to suggest that the State acted to delay the trial to gain any advantage. To grant Defendant relief would infringe on "the societal interest in trying people accused of crime, rather than granting them immunization because of legal error. . . ." *State v. Alfred*, 337 So.2d 1049,1057 (La. 1976).

Videotaped Statements

37

On September 21, 2009, Defendant filed a motion *in limine* to admit the videotaped statements of William Gallier and Russell Clement as substantive evidence in the defense case. Defendant asserts in brief that as a direct result of the delay caused by the lack of funding for a capital case, the two witnesses became unavailable. One of the two witnesses, William Gallier, was discussed above as alleging that his brother had told him that while the brother and a man other than Defendant were delivering drugs to the victim, the other man shot Marsh while the brother sat waiting in the shooter's car. However, Gallier later retracted the statement. According to Defendant, the other unavailable witness, Russell Clement, told the police that the victim was a drug dealer involved in a gang out of Houston, Texas, called "Vacos Locosis." Clement purportedly told the police that a member of the gang, who was nicknamed Chocolate, wanted the victim to be roughed up and said "take all his money, take his truck, take his jewelry, everything." Chocolate wanted Clement to do the job, but he refused. Clement supposedly said that Chocolate said she would take care of it. Clement allegedly stated that he knew Chocolate had guns, so he assumed she took care of it.

In his motion, Defendant argued that not allowing the admission of the above taped statements denied him his constitutional right to present a defense. He maintained that the statements were admissible under the hearsay exception rule which allowed introduction of statements made by unavailable witnesses that were made against penal interest and therefore carried the indicia of reliability.

In its response to Defendant's motion, the State argued that the statements were hearsay in one case, hearsay within hearsay in the second case, and therefore inherently unreliable and uncorroborated as required by La.Code Evid. art. 804.

38

The trial court ruled:

> Hearsay is testimony in court or written evidence of a statement made out of court statement [sic] offered as an assertion to show the truth of the matter as asserted, and thus resting upon its credibility of the out of court asserter. State v. Martin[,] 458 So.2d 454.

> In this case as in that case the declarant was not present. The statement was not subject to oath, not subject to cross examination. The central concern then is the reliability issue of that statement on review.

> The Court upon viewing the statements and listening to argument of counsel, do[sic] not find them to be reliable or trustworthy, having some minimal value to the defendant's right to present a defense.

> The exception of declaration against penal interest is recognized and is exception to the hearsay rule. That is admissible when the declarant is unavailable at trial and when there's additional evidence indicating that the declarant's statement is reliable. State v. Rushing[,] 464 So.2d 268.

> At this time the Court finds the defense has failed to submit sufficient information to justify the reliability involved. I do not find that it contains statements against the penal interest of the declarant within that exception.

> Under the guidelines in that analysis referenced in State v. McCullough[,] the Court would deny the motion in limine to admit said statements.

Louisiana Code of Evidence Article 804(B)(3) (emphasis added), provides:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible *unless corroborating circumstances clearly indicate the trustworthiness of the statement.*

In *State v. McCullough*, 00-983, pp. 30-31 (La.App. 3 Cir. 12/6/00), 774 So.2d 1105, 1122-23, *writ denied,* 01-533 (La. 1/25/02), 806 So.2d 669, this court agreed that the right to present a defense through the use of statements made against penal interest was a fundamental right.

This issue was addressed by this court in *State v. Green,* 98-1388 (La.App. 3 Cir. 3/31/99); 735 So.2d 723. In that case, Green contended the trial court erred in refusing to allow the introduction of the typed statement of Fred Bush. The defendant contended he was prejudiced because Jerry Joseph testified at trial for the state, but Bush invoked the Fifth Amendment when subpoenaed to testify. For this reason, Green argued he should have been allowed to introduce Bush's statement. This court set forth the following discussion of the applicable case law:

In *State v. Van Winkle*, 658 So.2d 198 (La.1995), the Louisiana Supreme Court stated:

A criminal defendant has the constitutional right to present a defense. U.S. Const. Amend. 6; La. Const. Art. 1 § 16; *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *State v. Gremillion,* 542 So.2d 1074 (La.1989); *State v. Vigee,* 518 So.2d 501 (La.1988). Due process affords the defendant the right of full confrontation and cross examination of the State's witnesses. *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *State v. Mosby*, 595 So.2d 1135 (La.1992). It is difficult to imagine rights more inextricably linked to our concept of a fair trial. Evidentiary rules may not supersede the fundamental right to present a defense. In *State v. Gremillion, supra,* the defendant attempted to introduce evidence that third parties, rather than the defendant, had killed the victim. The evidence consisted of a statement that the victim had made to a sheriff's deputy who investigated the crime. The statement was that he had been attacked and beaten by three white males. The trial court and the Court of Appeal both held the statement was inadmissible hearsay. We agreed that the statement was hearsay and that it did not meet any applicable exception (res gestae, dying declaration, business records). However, we concluded that normally inadmissible hearsay may be admitted if it is reliable, trustworthy and relevant, and if to exclude it would compromise the defendant's right to present a defense. See *Chambers v. Mississippi*, 410 U.S. at 302, 93 S.Ct. at 1049. Exclusion of the statement in *Gremillion*

40

> impermissibly impaired the defendant's fundamental right. 542 So.2d at 1079, citing *State v. Washington,* 386 So.2d 1368 (La.1980).

*Van Winkle*, 658 So.2d at 201.

The Louisiana Supreme Court summarized the history of the rule regarding statements made against penal interest for the purpose of a defendant's fundamental right to present a defense in *State v. Hammons,* 597 So.2d 990, 995-97 (La.1992):

> Louisiana's rule as to statements against penal interest is closely patterned after Fed.R.Evid. 804. The history of the federal rule is therefore pertinent.

> At common law, only statements against pecuniary or proprietary interest were originally admissible as an exception to the hearsay rule. Statements against penal interest were not accepted because of the fear that such statements, particularly when offered to exculpate the accused, would be fabricated by the witness testifying to his knowledge of the statement or by someone who would then make himself unavailable. 5 John H. Wigmore, *Evidence in Trials at Common Law* § 1476-77 (Chadbourn rev., 1974); 4 David W. Louisell & Christopher B. Mueller, *Federal Evidence* § 489 (1980); 2 Stephen A. Saltzburg & Michael M. Martin, *Federal Rules of Evidence Manual* 401 (5th ed. 1990). Scholars and dissenting jurists persistently criticized the exclusion of such evidence. *Donnelly v. United States,* 228 U.S. 243, 33 S.Ct. 449, 57 L.Ed. 820 (1913) (Holmes, J., dissenting); Wigmore, *supra,* § 1476-77. Eventually courts began to admit declarations against penal interest. Louisell & Mueller, *supra*, § 489; *McCormick on Evidence* § 278 (Edward W. Cleary ed., 3rd ed 1984); see *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

> Prompted by these rulings, Congress incorporated in the federal rules an exclusion from the hearsay rule for statements against penal interest. However, because of the traditional suspect nature of admitting statements by a third-party that exculpate an accused, the federal rules specifically prohibited admission of these statements unless the declarant is unavailable and corroborating circumstances clearly indicate the trustworthiness of the declaration. Fed.R.Evid. art. 804(b)(3); *McCormick on Evidence, supra*, § 278; Louisell & Mueller, *supra,* § 489.

> Statements against penal interest were first recognized by this court as exceptions to the hearsay rule in *State v. Gilmore,* 332 So.2d 789 (La.1976). In *Gilmore* the defendant presented a witness' testimony

41

that another man had confessed to committing the crime for which the defendant was charged. The declarant died after making the statement and was unavailable for trial. Other evidence established that the declarant had been in a struggle with the victim moments before the victim was shot and had also confessed the shooting to others. This court held that this additional evidence indicating the statement's reliability, along with the unavailability of the declarant, made the statement admissible as an exception to the hearsay rule.

Admission of statements against interest, as a traditional exception to the hearsay rule, is based on necessity and trustworthiness. The unavailability of the declarant requirement generally establishes the need to admit his out-of-court statement. The "against interest" requirement assures some degree of trustworthiness, because a person ordinarily does not make a statement that is disadvantageous to himself without substantial reason to believe that the statement is true. Louisell & Mueller, *supra, §* 489.

Fed.R.Evid. 804(b)(3) requires for admissibility of a statement against interest the objective determination that "a reasonable man in his position would not have made the statement unless he believed it to be true." This standard is especially appropriate to the admission of having committed a crime. Louisell & Mueller, *supra, §* 489; *McCormick on Evidence, supra*, § 279; *State v. Rushing,* 464 So.2d 268 (La.1985); *State v. Hudson*, 361 So.2d 858 (La.1978).

When the statement is one against the declarant's penal interest, the circumstances surrounding the making of the statement may be significant in determining its trustworthiness. If a declarant admits sole responsibility for a serious crime, the statement is generally prima facie against interest so as to satisfy this requirement of the rule. Louisell & Mueller, *supra, §* 489. However, if the statement is clearly self-serving, as when the declarant is seeking favorable treatment for himself in return for cooperation, the statement may be deemed not against his interest and thus may fall outside the exception. *Id.* Likewise, when the declarant unknowingly speaks to informants or undercover agents, the statement is usually admissible under the exception. *Id.*; see also *McCormick on Evidence, supra*, § 279; Saltzburg & Martin, *supra,* 401.

When the statement tending to expose the declarant to criminal liability is offered to exculpate the accused, La.Code.Evid. art. 804 B(3) expressly requires corroborating circumstances indicating trustworthiness. The burden of satisfying the corroboration requirement is on the accused. Louisell & Mueller, *supra*, § 489 (Supp.1991). That burden may be satisfied by evidence independent of the statement which tends, either directly or circumstantially, to establish a matter asserted by the statement. Louisell & Mueller, *supra, §* 489. Circumstantial evidence of the veracity of the declarant as to the portion of the

statement exonerating the accused is generally sufficient. Typical corroborating circumstances include statements against the declarant's interest to an unusual or devastating degree, or the declarant's repeating of consistent statements, or the fact that the declarant was not likely motivated to falsify for the benefit of the accused. *Id.* at 1160.

In *Hammons,* two men robbed a pharmacy, demanding a specific drug along with other "uppers" and "downers." A man who was under investigation for another crime made statements that two other "dudes" were arrested for the crime that he and his partner committed. He stated that he sent his partner into the store to commit the robbery. Evidence established that the partner's appearance was strikingly similar to Hammons appearance. The man also bragged about the specific drug they had demanded from the pharmacist. Furthermore, a fingerprint lifted from the tape that the robber used to bind the store's employees did not match Hammons' fingerprint. The supreme court noted:

> Stanford's statements which form the basis of the new trial motion were clearly made under circumstances that were against Stanford's penal interest. Stanford admitted organizing and participating in the robbery of the Slidell pharmacy, acts which Stanford knew were criminal and punishable by a significant length of imprisonment. The statements were made to an informant at a time when Stanford was unaware that Brown occupied this position. Stanford did not make the statement to put himself in a bargaining position with law enforcement officials, since he was not then charged with any other crime and he knew defendant and his father had already been arrested for that crime. There was certainly no suggestion that Stanford made these admissions under motivation to benefit defendant.

> These same circumstances also serve to corroborate the trustworthiness of the statements. In the midst of a deal to sell the dilaudid obtained in the robbery of the Lakewood Pharmacy, Stanford felt at liberty to discuss his participation in the robbery with an acquaintance such as Brown whom he felt would keep the information confidential, especially after someone else had been arrested for the crime. Stanford did not personally know defendant or his father and had no motivation to make a false statement for their benefit. The fact that Stanford repeated his statements concerning his participation in the robbery on several occasions, and not on a single isolated incident, further indicate their trustworthiness.

43

*Id.* at 997.

In the instant case, Defendant asserted that the declarants, Gallier and Clement, were unavailable because they could not be located. He submitted affidavits from his lead investigator detailing the efforts made to locate the two men. The State, however, argued that the affidavits were not sufficient to establish unavailability and that it was entitled to cross-examine the investigator as to her efforts. The State further argued that Defendant did not offer sufficient evidence of reliability and that the evidence was a "legally prohibited attempt to smear the victim."

As noted, the burden of proof was on Defendant. Gallier and Clement's statements were not statements against penal interest. Gallier stated that his brother told him that he was present when another man, other than Defendant, shot and killed the victim. Clement's story was that a drug dealer wanted the victim beaten up. Moreover, Clement's purported statement is not even in the record before this court. The alleged content of the statement was only revealed by defense counsel at the hearing. At most, both men indicated that they had been involved in drug activity to some degree. As noted above in *Hammons*, "[t]ypical corroborating circumstances include statements against the declarant's interest to an unusual or devastating degree, or the declarant's repeating of consistent statements . . . " *Id.* at 997. Defendant did not offer any independent evidence to indicate the reliability of the statements and to establish the veracity of the men making the statements.

Based on the jurisprudence and the facts of the case, the trial court did not commit error when it denied Defendant's motion to introduce the two men's statements to the jury.

Majority Verdict

44

Defendant argues that his rights under the Sixth and Fourteenth Amendments were violated when he was convicted of murder by a majority verdict, rather than a unanimous verdict. While conceding that *State v. Bertrand,* 08-2215 (La. 3/17/09), 6 So.3d 738, ruled that the statute permitting non-unanimous twelve person jury verdicts of second degree murder were constitutional, Defendant nonetheless asserts that this court should consider the recent analysis of *McDonald v. Chicago*, ___ U.S. ___, 130 S.Ct. 3020 (2010), and grant him relief.

The issues discussed in *McDonald* pertain to individual constitutional rights to possess handguns. Defendant does not argue in what way *McDonald* applies to the case currently before this court. Because Defendant did not brief his argument that the non-unanimous twelve person verdict is unconstitutional, we find that the argument has been abandoned and will not be considered by this court. Uniform Rules—Courts of Appeal, Rule 2-12.4.

Double Jeopardy

Defendant asserts that he was convicted of second degree murder and armed robbery in violation of the State and Federal Constitutional Double Jeopardy Clauses. He contends that "the state relied upon the evidence that Mr. Boyer shot and killed Bradlee Marsh in order to steal his money as proof of the use of force in the armed robbery and the killing in the murder count."

Double jeopardy prohibits a person being put twice "in jeopardy of life or liberty for the same offense." La.Code Crim.P. art. 591.

> Both the United States Constitution and the Louisiana Constitution provide double jeopardy protection to a criminal defendant. The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." *See also* La. Const. art I, § 15. The protection against double

45

jeopardy applies in three situations: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *State v. Smith*, 95-61 (La.7/2/96), 676 So.2d 1068; and *State v. Mayeux,* 498 So.2d 701 (La.1986).

*State v. Walker,* 00-1028, pp. 2-3 (La.App. 3 Cir. 1/31/01), 778 So.2d 1192, 1194, *writ denied*, 01-546 (La. 2/1/02), 808 So.2d 336.

In pertinent part, second degree murder is defined as the killing of a human being:

> (1) When the offender has a specific intent to kill or to inflict great bodily harm; or

> (2)(a) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, second degree kidnapping, aggravated escape, drive-by shooting, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.

La.R.S. 14:30.1(A)

Armed robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by the use of force or intimidation, while armed with a dangerous weapon." La.R.S. 14:64(A).

Specifically, Defendant argues that the offense of second degree murder was factually a "felony murder," wherein armed robbery was the underlying offense as described above in La.R.S.14:30.1(A)(2)(a). He asserts, therefore, that he was twice punished for the same behavior. However, a defendant can be convicted of second degree murder where he had the specific intent to kill the victim or to cause great bodily harm and of armed robbery where he took something of value from the victim

by force or intimidation while armed with a dangerous weapon. *See State v. Jones,* 94-187 (La.App. 4 Cir. 8/17/94), 642 So.2d 252; *State v. Salone,* 93-1635 (La.App. 4 Cir. 12/28/94), 648 So.2d 494; and *State v. Davies,* 35,783 (La.App. 2 Cir. 4/5/02), 813 So.2d 1262, *writ denied,* 02-1564 (La. 5/9/03), 843 So.2d 389.

In *Davies,* the second circuit affirmed defendant's convictions of two counts of attempted aggravated rape, two counts of second degree kidnapping, and one count of second degree murder. Davies argued he was subjected to double jeopardy because the second degree kidnapping was an enumerated offense to the second degree murder under La.R.S. 14:30.1(A)(2)(a).

Noting that second degree kidnapping did not have the same elements as second degree murder, the second circuit discussed "same offense" within the meaning of double jeopardy.

> To guide courts in the meaning of "same offense," the U.S. Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), provided a test: "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether those are two offenses or only one, is whether each provision requires proof of a fact which the other does not." In other words, if one of the statutes require proof of an additional fact which the other does not, the double jeopardy clause does not prohibit successive prosecutions. The *Blockburger* test was held to be constitutionally required by the U.S. Supreme Court in *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), and is embodied in Louisiana Code of Criminal Procedure Article 596.

> In addition to the "*Blockburger*" test, Louisiana requires a "same evidence" analysis. *State v. Vaughn, supra; State v. Steele*, 387 So.2d 1175 (La.1980). Under the same evidence test, offenses are deemed identical for purposes of double jeopardy where the evidence required to support the conviction on one charge is sufficient to support a conviction on the other. The same evidence test focuses on the proof necessary to convict rather than the actual evidence presented. *State v. Steele, supra.*

> *Blockburger* provides the initial test for determining whether two or more offenses are, in the abstract, considered the same for double

jeopardy purposes. The crimes of second degree murder, second degree kidnapping and attempted aggravated rape do not contain identical elements. Under the "same evidence test," however, crimes need not have identical elements in order for double jeopardy to apply. The crucial determination is whether the evidence necessary for a conviction of second degree murder is the same evidence necessary for a conviction of second degree kidnapping or attempted aggravated rape or vice versa.

The criminal conduct in this case continued over a period of time while defendant and his passengers were in his vehicle, which was in the course of traveling through different locations. The fact that all of these offenses grew out of a single criminal episode does not make them a single offense. The particular facts of each case must be examined to properly ascertain whether the conviction of one offense would bar conviction of the other.

We start with *Blockburger*, and if the offenses are not identical, we then proceed to an analysis of the particular circumstances of the individual case. As stated above, the offenses in this case require different elements and are not identical offenses under *Blockburger*.

Second degree kidnapping involved the forcible seizure and carrying of the two girls from Shreveport to DeSoto Parish without their consent. The girls were physically injured and abused while defendant was armed with dangerous weapons.

The attempted aggravated rape occurred separate and apart from the other crimes. After kidnapping the victims, defendant threatened to kill them if they refused to have sex with him. Defendant's actions were tending directly toward accomplishing his objective, the rape of both girls. The victims received threats of great and immediate bodily harm, accompanied by the apparent power of execution.

Second degree murder can be a specific intent crime (La.R.S.14:30.1(A)(1)), as well as based upon an underlying felony (La.R.S.14:30.1(A)(2)). The trial court instructed the jury on both theories of second degree murder. The evidence supports the finding that defendant had the specific intent to kill the girls. He told them that they would have sex with him or die. When defendant saw that the girls were going to jump from the car, he deliberately increased the car's speed knowing that it would result in death or great bodily harm. The facts and circumstances of S.J.'s death, together with the trial court's instructions on the elements and requirements of both sections of the second degree murder statute, support a conviction under the specific intent section.

The legislature has recognized that each statute involved in this case serves different purposes and that each violation is a separate

offense with different penalties. As such, double jeopardy does not prohibit defendant's convictions.

*Id.* at 1268-69.

The offenses in the current case are not identical under *Blockburger*. Each offense has an additional element the other offense does not have. The convictions were based primarily on Anthony Boyer's testimony, on Defendant's confession to the police, and on statements made to Defendant's grandmother and cousin. Anthony Boyer testified that Marsh gave him and his brother a ride in his truck. They ended up on a dead end road, and Marsh pulled his truck over. Anthony Boyer got out of the truck and walked a short distance away. He stated that the truck began to roll away, he heard shots, and the truck stopped rolling. When he returned to the truck, Defendant was sitting in the truck with Marsh and Marsh was dead. Boyer did not know if Defendant had taken anything from the victim.

Defendant, however, in his confession, stated that after his brother got out of the truck, he demanded money from Marsh. He said that he took out his gun, but Marsh hit his hand and the gun went off, shattering the driver's side window. He said that the truck began rolling as they grappled for the gun and that he shot Marsh at least twice by accident. He stated that he then took about five dollars out of Marsh's pocket, and a silver chain that Marsh was wearing.

Defendant's scenario suggests that Marsh was shot during the perpetration of the robbery but that there was no intent to kill. It was established by testimony and exhibits that the driver's side window was shattered, suggesting that the gun might have discharged during a struggle as Defendant described in his confession.

However, also presented at trial was the testimony of Dr. Terry Welke, a forensic pathologist and coroner for Calcasieu Parish, who examined Marsh's body

49

and was present during the autopsy. Dr. Welke testified that Marsh was shot three times. The shot wounds were all placed closely behind and in the right ear. He stated that two of the shot wounds were contact wounds, in that the barrel of the gun was placed against the skin in one case and the other shot wound was fired from about three-eights of an inch away. The third shot wound was fired from at least twenty-four inches away. None of the bullets exited the skull. The doctor could not state in what order the shot wounds were inflicted. The fact that the gun was placed against Marsh's head and fired twice shows that the shooting was not accidental.

The jury had to find that Defendant exhibited the specific intent to commit murder. Specific intent is that state of mind which exists when the acts of the accused indicate that he actively desired the consequence of his actions or inactions. La.R.S. 14:10(1). Moreover, specific intent may be inferred from the circumstances. Aiming a gun directly at a victim and pulling the trigger supports a finding of specific intent to kill or inflict serious harm to the victim. *State v. Lawson*, 08-123 (La.App. 5 Cir. 11/12/08), 1 So.3d 516. In the current case, the jury found that Defendant's act of shooting Marsh three times at very close range in the head indicated that he wanted to kill Marsh.

The facts necessary to support a conviction for the one offense would not support a conviction for the other offense, each offense required proof that the other offense did not. A second degree murder conviction required proof of specific intent to kill or inflict serious injury. An armed robbery conviction required proof of the taking of something of value from another by force or intimidation while armed with a dangerous weapon, and the evidence adduced at trial supported the jury's

50

determination that each offense was the result of separate conduct. There is no merit to the assertion of double jeopardy.

Joinder of Offenses

Defendant argues that the trial court erred when it permitted the State to join the two counts for trial. He asserts that only he was permitted to join offenses to be tried in the same proceedings.

However, in *State v. Crochet,* 05-123, pp. 3-5 (La. 6/23/06), 931 So.2d 1083, 1085-86, the supreme court stated:

> Consolidation of two or more criminal cases is governed by La.C.Cr.P. art. 706, which provides that "[u]pon motion of a defendant, or of all defendants if there are more than one, the court may order two or more indictments consolidated for trial if the offenses and the defendants, if there are more than one, could have been joined in a single indictment." The provision has remained unchanged since the legislature added it to the Code of Criminal Procedure in the comprehensive 1966 revision, *see* 1966 La. Acts 310, although the legislature has since then considerably expanded the rules governing joinder of two or more criminal offenses in a single proceedings. The statute permits a defendant to intrude on the otherwise plenary discretion of the state to determine "whom, when, and how" to prosecute, La.C.Cr.P. art. 61, by moving the trial court to consolidate crimes the state has chosen to prosecute in separate cases. However, given Louisiana's present broad joinder rules, La.C.Cr.P. art. 706 does not confer on a defendant a statutory right to hold the state to its initial charging decision that he alone may waive by moving for consolidation of the charges.

While Defendant argues in brief that the trial court allowed the joinder over his objections, the record shows that Defendant never objected to the State's motion in written form, argued against the motion at the hearing, or objected to the trial court's grant of the motion. Any alleged improper consolidation of offenses for trial is waived by the failure to object to the consolidation. *State v. Griffin,* 07-974 (La.App. 1 Cir. 2/8/08), 984 So.2d 97. *See also State v. Mallett*, 357 So.2d 1105 (La.1978), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 848 (1979). Furthermore, Defendant failed to

allege or establish prejudice to his case caused by any improper consolidation of offenses. *See Crochet,* 931 So.2d 1083. Accordingly, we find no error in the consolidation of these cases.

Motion for New Trial

Following trial, Defendant filed a motion for new trial. He asserts now that the trial court erred when it denied the motion. At the hearing on the motion, Defendant argued that the verdict was contrary to the law and the evidence. He listed all the rulings discussed above and asserted that the rulings showed prejudicial errors. He further argued that the State made improper comments during closing arguments on his failure to take the stand and that the trial court erred when it denied his request for an accomplice warning instruction to the jury.

In pertinent part, La.Code Crim.P. art. 851, grounds for new trial, provides:

The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.

The court, on motion of the defendant, shall grant a new trial whenever:

(1) The verdict is contrary to the law and the evidence:

(2) The court's ruling on a written motion, or an objections made during the proceedings, shows prejudicial error:

. . . .

(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial although the defendant may not be entitled to a new trial as a matter of strict legal right.

The motion was heard on the day scheduled for sentencing, October 14, 2009. Following arguments by Defendant and the State, the trial court denied the motion. A trial court's grant or denial of a motion for new trial will not be set aside absent

proof of abuse of discretion. *State v. Viree*, 95-176 (La.App. 3 Cir. 3/6/96), 670 So.2d 733, *writ denied,* 96-885 (La. 9/20/96), 679 So.2d 431.

Defendant argues that his confession was a false confession in that he was intimidated by violent acts committed on him prior to being questioned by the police. There is nothing in the record that casts any degree of reasonable doubt as to the voluntariness of the confession. *See State v. Hills*, 354 So.2d 186 (La.1977). The convictions were based primarily on Defendant's confession to the police and others that he shot Marsh and took money and a silver chain from Marsh's lifeless body.

Both detectives, Chad Cradeur and Leslie Blanchard, testified at trial regarding Defendant's confession and the circumstance surrounding the confession. The jury also heard the audiotape of the confession. A review of the audiotape indicated that Defendant's statements were clear, concise, and rationally made, as discussed above.

Defendant's brother testified that he and Defendant were with Marsh in Marsh's truck. When he got out of the truck, Marsh and Defendant were alone together, and Marsh was alive. When he returned to the truck, Marsh was dead. Moreover, on the night of the shooting Defendant told his grandmother and his cousin, Timothy Windham, that he had shot someone. The jury obviously believed Defendant's confession and his brother's testimony. Furthermore, Defendant exhibited a guilty mind by fleeing the state and by attempting to escape apprehension in Florida.

Finally, testimony regarding the manner in which Marsh was shot, two times in the head with the gun pressed to the skull and a third time in the head from an unspecified distance, indicated specific intent to kill him.

At the hearing, the trial court noted:

53

The Court heard the evidence. The Court is aware of the burden that the State has, as well as the element[s]; and there was–Additionally, there was no doubt in the Court's mind that the defendant was responsible for the death of the victim in this matter. The jurors were given the proper instructions with regard to the charge, as well as responsive verdicts and they viewed the evidence and rendered a verdict accordingly. I do not find the verdict contrary to the law and evidence as submitted at trial.

When a trial court reviews whether the evidence was contrary to the law and evidence, it must apply the "thirteenth juror" standard and re-weigh the evidence. *State v. Hamilton,* 03-1385 (La.App. 3 Cir. 3/3/04), 867 So.2d 151, *writ denied*, 04-1227 (La. 4/22/05), 899 So.2d 567. Defendant did not raise an issue of sufficiency of the evidence to the trial court or to this court.

In *Hamilton,* citing *State v. Sykes,* 03-397, pp. 2-3 (La.App. 3 Cir. 10/8/03), 857 So.2d 638, 641-42, *writ denied,* 03-3429 (La. 4/2/04), 869 So.2d 875, this court noted:

> The supreme court has stated the following regarding the distinction of claims raised in a motion for new trial and a motion for post-verdict judgment of acquittal:
>
>> However, a motion for new trial presents only the issue of the weight of the evidence, *see Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982) (setting aside a verdict as against the weight of the evidence, as opposed to the insufficiency of the evidence, under the Due Process Clause does not bar retrial) and is examined under the so-called thirteenth juror standard under which the trial judge re-weighs the evidence. *State v. Voorhies,* 590 So.2d 776, 777 (La.App. 3 Cir.1991). The question of sufficiency is properly raised by a motion for post-verdict judgment of acquittal. La.C.Cr.P. art. 821; *State v. Demery*, 28,396, p. 6 (La.App. 2 Cir. 8/21/96), 679 So.2d 518, 522. But see Article 851 comment (d) ("[i]t is the duty of the trial judge to pass upon the sufficiency of the

evidence" once ground (1) is raised under Article 851).

In the instant case, the constitutional issue of sufficiency is treated in assignment of error number 1 because the denial of a motion for new trial based upon La.C.Cr.P. art. 851(1) is not subject to review on appeal. *State v. Skelton*, 340 So.2d 256, 259 (La.1976) ("[W]e have uniformly held that a bill of exceptions reserved to the refusal of the trial judge to grant a motion for a new trial based on Article 851(1), relative to sufficiency of the evidence presents nothing for our review.") (citations omitted); *State v. Bartley*, 329 So.2d 431, 433 (La.1976) ("It is well established in Louisiana that an assignment of error reserved to the denial of a motion for a new trial alleging that the verdict is contrary to the law and the evidence presents nothing for appellate review.") (citations omitted).

*State v. Snyder,* 98-1078 (La.4/14/99), 750 So.2d 832, 859, n. 21(alteration in original).

*Hamilton,* 867 So.2d at 161.

In his motion for a new trial, Defendant sought to support the allegation of prejudicial effect of the trial court's and this court's rulings with affidavits from jurors stating that they would have liked to have heard the testimony regarding the violent tendencies of Anthony Boyer and the expert witness' testimony on false confessions. However, the evidence adduced at trial was not contrary to the verdicts rendered. What the jurors would have liked to have heard was not relevant to this issue, especially since, absent a claim of juror misconduct, inquiry into a "juror's mind or emotions" or "mental processes" is improper. La.Code Evid. Art.606(B). *See also State v. Hoffman*, 98-3118 (La. 4/11/00), 768 So.2d 542, *cert. denied,* 531 U.S. 946, 121 S.Ct. 345 (2000).

55

Furthermore, as noted above, as set forth in La.Code Crim.P. art. 858, "[n]either the appellate nor supervisory jurisdiction of the supreme court may be invoked to review the granting or the refusal to grant a new trial, except for error of law." *See State v. Gilbert*. 286 So.2d 345 (La.1973), *cert. dismissed*, 420 U.S. 902, 95 S.Ct. 820 (1975).

Defendant listed the trial court's and this court's rulings that allegedly show prejudicial error as follows:

a) The exclusion of defense evidence regarding the psychology of confessions and interrogations;

b) The exclusion of defense evidence of Anthony Boyer's unprosecuted violence toward Rhonda Boyer;

c) The exclusion of defense evidence regarding the misrepresentation of Det. Chisolm's interview results in Det. Caudeur's report;

d) The exclusion of defense evidence regarding the alternative suspects in this case;

e) The admission of testimony regarding Mr. Boyer's arrest in Florida and possession of a gun, including the use of the transcript of Det. Weber's prior testimony;

f) The state's improper comments in closing argument on the defendant's silence; and

g) The failure of the trial court to give an accomplice warning.

Except for the final two, the listed errors have all been addressed herein, and this court has found that there were no prejudicial errors committed by the trial court or this court in their rulings on Defendant's motions. Therefore, we will consider only Defendant's final two assertions of error in this regard.

On September 29, 2009, Defendant filed a jury instruction regarding accomplice testimony. He asserted that Anthony Boyer was an accomplice to the

56

offenses charged and asked that the trial court read an instruction to warn the jurors that uncorroborated accomplice testimony should be regarded with great caution. The trial court declined to give the instruction, noting that there was sufficient corroborating evidence of Defendant's guilt, primarily his own confession. The trial court noted that "there is significant evidence that the Court has seen that does corroborate the accomplice's statement, as well as the statement of the defendant, and for those reasons found that the precautionary statement on accomplice was not appropriate."

Both the trial court and Defendant referred to *State v. Hollins,* 08-1033, pp. 4-5 (La. 6/26/09), 15 So.3d 69, 71-73, wherein the supreme court discussed special instructions to the jury regarding accomplice testimony:

> Under La.C.Cr.P. art. 807, a requested special jury charge shall be given by the court if it does not require qualification, limitation or explanation, and if it is wholly correct and pertinent. The special charge need not be given if it is included in the general charge or in another special charge to be given. *State v. Segers,* 355 So.2d 238, 244 (La.1978). Failure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. *State v. Marse*, 365 So.2d 1319, 1322-24. La.C.Cr.P. art. 921.
>
> In Louisiana, as a general principle of law, a conviction may be sustained on the uncorroborated testimony of a purported accomplice, although the jury should be instructed to treat such testimony with great caution. *State v. Tate,* 01-1658 (La.5/20/03), 851 So.2d 921, 928, *cert. denied*, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248; *State v. May*, 339 So.2d 764, 775 (La.1976); *State v. Matassa*, 222 La. 363, 62 So.2d 609 (1952). However, where there is material corroboration of the accomplice's testimony, the cautionary accomplice instruction is not required. *State v. Schaffner,* 398 So.2d 1032, 1035 (La.1981); *State v. Murray*, 375 So.2d 80 (La.1979) (citing *U.S. v. Lee*, 506 F.2d 111 (D.C.Cir.1974); *U.S. v. Clark*, 480 F.2d 1249 (5th Cir. (Ga.) 1973); *Davis v. U.S.*, 411 F.2d 1126 (5th Cir. (Tex.) 1969); *U.S. v. Cianchetti*, 315 F.2d 584 (2nd Cir. (Conn.) 1963)). Whether to give the accomplice instruction is within the sound discretion of the trial court. *Schaffner, supra* at 1035.

In this case, defendant's conviction was sustained on the testimony of Fields. While the jury was given the general charge relating to the credibility of witnesses, it was not given a special charge relating to accomplice testimony. To determine whether the trial court abused its discretion in refusing to give the special jury charge, we must first consider whether Fields was an "accomplice," and, if so, whether his testimony was uncorroborated. The is no statutory definition of "accomplice" in our codes or statutes. In Louisiana, parties to a crime are either principals, La. R.S. 14:24, or accessories after the fact. La. R.S. 14:26. This Court first defined an accomplice in 1945 in connection with accomplice testimony as "one who is associated with others in the commission of a crime." *State v. Gunter*, 208 La. 694, 23 So.2d 305, 311 (1945). This fits within the definition of a principal under La. R.S. 14:24, which defines a principal as "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime ..." As we further stated in *Gunter*, a person can be an accomplice regardless of whether or not he has been convicted of or pled guilty to the crime. *Gunter, supra* at 311.

The trial court instructed the jurors regarding witnesses' testimonies as follows:

"As jurors you alone determine the weight and credibility of the evidence. As the sole judges of the credibility of witnesses and of the weight their testimony deserves, you should scrutinize carefully the testimony and the circumstances under which the witness has testified." As noted in *Hollins,* a special instruction need not be given if it is adequately covered in a general instruction.

We cannot say that the trial court erred when it denied Defendant's request for the accomplice warning instruction. There was sufficient corroborating evidence, and to have read the instruction to the jury could have caused confusion. We find no error in the trial court's ruling.

Defendant asserts that the prosecutor made improper comments during closing argument, thus drawing the jury's attention to the fact he did not testify. The prosecutor stated during the rebuttal argument: "Now, isn't it interesting that now, after all these years, like Mr. Bourke said, we come up with, ahh, the brother did it;

58

the brother did it. Now, you know the brother did it. I'm just trying to cover up for my brother." Defendant immediately objected.

At the hearing on Defendant's motion for a new trial, the trial court did not find the prosecutor's comment directly or indirectly referred to Defendant's constitutional right to not testify.

In *State v. Mitchell*, 00-1399, pp. 4-5 (La. 2/21/01), 779 So.2d 698, 701-02, the supreme court discussed La.Code Crim.P. art. 770(3), which mandates that the trial court declare a mistrial when the prosecutor "refers directly or indirectly to . . . the failure of the defendant to testify in his own defense":

> The purpose behind art. 770(3)'s prohibition against such prosecutorial comment is to protect the defendant's Fifth Amendment right against self-incrimination by preventing attention being drawn directly or indirectly to the fact that the defendant has not testified on his own behalf. *State v. Fullilove,* 389 So.2d 1282, 1283 (La.1980); *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).
>
> "Direct" and "indirect" references to the defendant's failure to take the stand are prohibited by article 770(3). *State v. Johnson,* 541 So.2d 818, 822 (La.1989). "When the prosecutor makes a direct reference to the defendant's failure to take the stand, a mistrial should be declared, and 'it is irrelevant whether the prosecutor intended for the jury to draw unfavorable inferences from defendant's silence.'" *Id.* (citing *Fullilove,* 389 So.2d at 1284). When the reference to the defendant's failure to take the stand is not direct, this Court will inquire into the remark's "intended effect on the jury" in order to distinguish indirect references to the defendant's failure to testify (which are impermissible) from statements that are not (which are permissible, though not favored). *Johnson,* 541 So.2d at 822; *Fullilove,* 389 So.2d at 1284; *State v. Jackson,* 454 So.2d 116, 118 (La.1984). In order to support the granting of a mistrial, the inference must be plain that the remark was intended to focus the jury's attention on the defendant's not testifying. *State v. Smith*, 327 So.2d 355, 362 (La.1975) (on rehearing); *State v. Reed,* 284 So.2d 574, 576 (La.1973); *State v. Howard,* 262 La. 270, 263 So.2d 32 (1972).
>
> There are indirect references which focus on, or are intended to focus on a defendant's failure to testify. One such instance is when the defendant is the only witness who can rebut the state's evidence. Such a reference to the testimony as uncontroverted focuses the jury's

59

attention on the defendant's failure to testify and warrants a mistrial. *State v. Perkins*, 374 So.2d 1234, 1237 (La.1979); *Fullilove*, 389 So.2d at 1284; *State v. Harvill*, 403 So.2d 706, 711 (La.1981). Then, there are and can be indirect references which are not intended to focus on a defendant's not testifying. One such frequently seen instance is a prosecutor's emphasizing that the State's evidence is unrebutted in a situation where there are witnesses other than the defendant who could testify on behalf of the defense, but have not. *See, e.g., State v. Jackson,* 454 So.2d 116, 118 (La.1984); *State v. Smith,* 433 So.2d 688, 697 (La.1983); *State v. Latin*, 412 So.2d 1357, 1363 (La.1982). Also "[s]tatements in argument to the effect that there is no refuting evidence does not constitute an impermissible reference to the defendant's failure to testify." *State v. Reed*, 284 So.2d 574, 576 (La.1973) (citing *State v. Cryer*, 262 La. 575, 263 So.2d 895 (1972)).

In defense counsel's closing argument, he argued strenuously that there was a great possibility that Anthony Boyer was the shooter and that Defendant only confessed to the crime to cover up for his brother. The prosecutor's comment made during her rebuttal was a natural response to defense counsel's assertions and did not focus the jury's attention on Defendant's failure to testify. First he confessed, then later he said his brother did it. We find no merit in this argument.

Defense Counsel

Defendant argues that his constitutional right of choice and continuity of counsel was violated. Defendant's primary complaint is that Rachel Jones, an attorney with the Louisiana Capital Assistance Center and who began representation of Defendant in January 2008, was due to deliver a baby on or about the date of Defendant's trial. In brief, Defendant argues:

> Until April 15, 2009, Mr. Boyer was being represented by Rachel Connor nee Jones. On that day the state requested that this matter be set for trial on September 21, 2009. The defense objected without success on the basis that Mrs. Connor was pregnant and that trial date was shortly after her due date. As a direct result, Mr. Boyer was deprived of his choice of counsel and deprived of the continuity of his attorney-client relationship with Mrs. Connor.

60

Defendant objected to the trial court's setting of the trial date based on Jones' possible due date. However, the record indicates that the current attorney, Richard Bourke, Director of the Louisiana Capital Assistance Center, was closely associated with the case from the time of the reduction of the charge from first degree murder to second degree murder in May 2007, up to and through trial. Accordingly, Defendant was continuously and more than adequately represented. Moreover, an indigent defendant does not have the right to a court-appointed counsel of his choice or a particular attorney-client relationship. *See Reeves,* 11 So.3d 1031.

Excessive Sentence

For his final assignment of error, Defendant argues that the two sentences imposed were constitutionally excessive under the circumstances of the case. The punishment for second degree murder is life imprisonment without the benefit of suspension of sentence, probation, or parole. La.R.S. 14:30.1(B). He was further sentenced to the maximum term of ninety-nine years on the conviction for armed robbery, plus an additional five years because of the use of a firearm, for a total of one hundred and four years at hard labor without the benefit of suspension of sentence, probation, or parole. La.R.S. 14:64(B) and 14:64.3(A). The sentences were ordered to be served concurrently. Defendant argues that the trial court failed to take into consideration mitigating factors.

In *State v. Office,* 07-193, pp. 8-9 (La.App. 3 Cir. 10/3/07), 967 So.2d 1185, 1191-92, *writ denied,* 07-2274 (La. 4/18/08), 978 So.2d 348, this court held that "[t]he analysis for excessive-sentence claims is well-settled":

> [Louisiana Constitution Article I], § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly

61

disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell,* 404So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied,* 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied,* 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling,* 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied,* 01-838 (La.2/1/02), 808 So.2d 331(second alteration in original).

In further refining the analysis, this court has stated:

[A]n appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith,* 99-0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook,* 95-2784 (La.5/31/96); 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061.

At the sentencing hearing, the trial court heard victims' impact statements and argument urging leniency of sentence considering Defendant's difficult childhood

and deprived life. The trial court discussed the aggravating and mitigating factors for the record.

Following the pronouncement of the sentences, Defendant made an oral objection: "[N]ote our objection to the sentence on the basis of the material raised in the sentencing memorandum." Defendant filed a sentencing memorandum on October 14, 2009. In the memorandum, defense counsel gave a detailed account of Defendant's upbringing up to the time of the shooting. He pointed out Defendant's documented mental health problems. He argued that Defendant suffered a violent and abusive childhood to such a degree that Child Protection Services had to intervene. Defendant was raised in a very dysfunctional family and had only a fifth grade education. The memorandum addressed, however, only the excessiveness of the anticipated mandatory life sentence for the second degree murder and argued that whatever sentence the trial court imposed on the armed robbery with a firearm should be imposed concurrently.

Louisiana jurisprudence has consistently held that a mandatory life sentence for second degree murder is not constitutionally excessive unless the offender can show that he is exceptional, which "in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstance of the case." *State v. Young,* 94-1636, pp. 5-6 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 531, *writ denied,* 95-3010 (La. 3/22/96), 669 So.2d 1223. When a defendant asserts that a mandatory sentence is excessive, the burden is on him to show substantially clear and convincing evidence to rebut the presumption of constitutionality. *State v. Wright,* 42,956 (La.App. 2 Cir. 3/5/08), 978

63

So.2d 1062, *writ denied*, 08-819 (La. 10/31/08), 994 So.2d 532. *See also State v. Dorthey*, 623 So.2d 1276 (La.1993); *State v. Pierre,* 02-277 (La.App. 3 Cir. 6/11/03), 854 So.2d 945, *writ denied,* 03-2042 (La. 1/16/04), 864 So.2d 626; and *State v. Jenkins*, 98-2772 (La.App. 4 Cir. 3/15/00), 759 So.2d 861, *writ denied*, 00-1136, 00-1274 (La. 4/12/01), 790 So.2d 3.

In the current case, Defendant failed to meet his burden of proving by clear and convincing evidence that the mandatory life sentence was constitutionally excessive in his case. The evidence supports the conclusion that Defendant knew right from wrong when he intentionally killed Marsh. Defendant did not prove himself exceptional by substantially clear and convincing evidence. Therefore, there is no merit to the allegation that he received a constitutionally excessive sentence.

While Defendant orally objected to the sentence based on a sentencing memorandum filed prior to the sentencing hearing, the memorandum argued only that the mandatory life sentence was excessive. He did not file a motion to reconsider the ninety-nine-year sentence for excessiveness. Therefore, the Defendant is limited to a "bare bones" claim of constitutional excessiveness. *State v. West,* 01-969 (La.App. 3 Cir. 12/12/01), 801 So.2d 619.

Defendant received ninety-nine years for the armed robbery, plus five years because of the use of a firearm, for a total of one hundred and four years at hard labor. He received the maximum sentence the trial court could have imposed. Normally, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Howard,* 43,227 (La.App. 2 Cir. 6/11/08), 987 So.2d 330, *writ denied*, 08-1608 (La. 4/3/09), 6 So.3d 766.

The trial court herein did not abuse its considerable discretion when it sentenced Defendant to the maximum sentence of ninety-nine years, plus five years for a total of one hundred and four years at hard labor. Unlike *State v. Sanborn,* 02-257 (La.App. 5 Cir. 10/16/02), 831 So.2d 320, *writ denied,* 02-3130 (La. 9/26/03), 854 So.2d 346, and *State v. Palmer*, 00-216 (La.App. 1 Cir. 12/22/00), 775 So.2d 1231, *writs denied,* 01-211 (La. 1/11/02), 807 So.2d 224, and 01-1043 (La. 1/11/02), 807 So.2d 229, wherein the victims did not die as a result of their injuries, Defendant purposefully killed Marsh by putting the gun to Marsh's head and firing at least two times. While the trial court did not address whether Defendant had a criminal history, we note that during Defendant's incarceration, he was charged with criminal damage to property and taking contraband into a penal institution. Furthermore, the record shows that during his detention, Defendant committed attempted aggravated escape and battery on a police officer. He was disciplined more than forty times while incarcerated.

> In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions but may properly review all prior criminal activity. *State v. Russell,* 40,526 (La.App. 2d Cir.1/27/05), 920 So.2d 866, *writ denied,* 2006-0478 (La.9/29/06), 937 So.2d 851; *State v. Jackson*, 612 So.2d 993 (La.App. 2d Cir.1993). The sources of information relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence, *e.g.*, hearsay and arrests, as well as conviction records. *State v. Myles*, 94-0217 (La.6/3/94), 638 So.2d 218. These matters may be considered even in the absence of proof the defendant committed the other offenses. *State v. Estes*, 42,093 (La.App. 2d Cir.5/9/07), 956 So.2d 779. Factors to be considered may include jail disciplinary records. *State v. Russell, supra*.

*Howard,* 987 So.2d at 338.

In the current case, in light of the law and the facts, we find that the trial court did not abuse its discretion. The only mitigating factor Defendant offered was his

difficult childhood, and the trial court noted it, and still found the seriousness of the offense a determinative aggravating factor. Considering the facts of this case, similarly situated offenders, and the severity of the offense, the sentence imposed on Defendant does not constitute a needless infliction of pain and suffering nor does the sentence shock this court's sense of justice.

## CONCLUSION

For these reasons, Defendant's  convictions and sentences are affirmed.

**AFFIRMED.**